THE BALTIMORE AND SUSQUEHANNA RAILROAD COMPANY, PLAINTIFF IN ERROR, *v.* ALEXANDER NESBIT AND PENELOPE D. GOODWIN.

The State of Maryland granted a charter to a railroad company, in which provision was made for the condemnation of land to the following effect; namely, that a jury should be summoned to assess the damages, which award should be confirmed by the County Court, unless cause to the contrary was shown.

The charter further provided, that the payment, or tender of payment, of such valuation should entitle the company to the estate as fully as if it had been conveyed.

In 1836, there was an inquisition by a jury, condemning certain lands, which was ratified and confirmed by the County Court.

In 1841, the legislature passed an act directing the County Court to set aside the inquisition and order a new one.

On the 18th of April, 1844, the railroad company tendered the amount of the damages, with interest, to the owner of the land, which offer was refused; and on the 26th of April, 1844, the owner applied to the County Court to set aside the inquisition, and order a new one, which the court directed to be done.

The law of 1841 was not a law impairing the obligation of a contract. It neither changed the contract between the company and the State, nor did it divest the company of a vested title to the land.

The charter provided, that, upon tendering the damages to the owner, the title to the land should become vested in the company. There having been no such tender when the act of 1841 was passed, five years after the inquisition, that act only left the parties in the situation where the charter placed them, and no title was divested out of the company, because they had acquired none.

The States have a right to direct a re-hearing of cases decided in their own courts. The only limit upon their power to pass retrospective laws is, that the Constitution of the United States forbids their passing *ex post facto* laws, which are retrospective penal laws. But a law merely divesting antecedent vested rights of property, where there is no contract, is not inconsistent with the Constitution of the United States.

THIS case was brought up from Baltimore County Court by a writ of error issued under the twenty-fifth section of the Judiciary Act.

The facts in the case are stated in the opinion of the court, to which the reader is referred.

It was argued by *Mr. Campbell* and *Mr. Yellot,* for the plaintiff in error, and *Mr. Johnson,* for the defendants in error.

The counsel for the plaintiff in error made the following points : —

1st. That the charter was a contract between the State of Maryland and the railroad company, and that the act of 1841, which varies the terms of that contract without the company's assent, is a law impairing the obligation of the contract, and therefore unconstitutional and void. Green *v.* Biddle, 8 Wheat. 84; Dartmouth College *v.* Woodward, 4 Wheat. 647, 663, 668, 669, 699, 710, 711, 712.

2d. That the title to the land condemned having vested by the confirmation of the inquisition, and the tender of the money anterior to the action by the Baltimore County Court, under the

act of 1841, that act is unconstitutional, because it divests vested rights, and in this way impairs the obligation of contracts.

*Mr. Johnson* contended, —

That there is nothing of the character of a contract in the charter, that, by the Constitution of the United States, deprives the legislature of the State of the power to order a re-hearing of the case. Satterlee *v.* Matthewson, 2 Pet. 380; Livingston's Lessee *v.* Moore et al., 7 Pet. 469; Wilkinson *v.* Leland, 2 Pet. 627; S. C., 10 Pet. 294; Watson *v.* Mercer, 8 Pet. 88; Charles River Bridge *v.* Warren Bridge, 11 Pet. 420.

Mr. Justice DANIEL delivered the opinion of the court.

This case comes before us from the District of Maryland, upon a writ of error to the court of Baltimore County, prosecuted under the twenty-fifth sectio 1 of the Judiciary Act.

The facts from which the questions to be adjudged arise are the following.

The legislature of Maryland, by a law of the 18th of February, 1828, incorporated the plaintiff in error by the name and style of the Baltimore and Susquehanna Railroad Company, for the purpose of constructing a railroad from the city of Baltimore to some point or points on the Susquehanna River. To enable this company to acquire such land, earth, timber, or other materials as might be necessary for the construction and repairing of the road, the law above mentioned, by its fifteenth section, authorized the company to agree with the owners of the land and other materials wanted, for the purchase or use thereof; and in the event that the company could not agree with the owners, or that the owners were femes covert under age, insane, or out of the county, this section provided that a justice of the peace of the county, upon application, should thereupon issue his warrant to the sheriff to summon a jury, who, in accordance with the directions contained in the same section of the statute, should value the damages which the owner or owners would sustain, and that the inquisition, signed and sealed by the jury, should be returned by the sheriff to the clerk or prothonotary of his county, to be filed in court, and that the same should be confirmed by said court at its next session, if no sufficient cause to the contrary be shown.

The section further provides, that "such valuation, when paid or tendered to the owner or owners of said property, or to his, her, or their legal representatives, shall entitle the company to the estate and interest in the same thus valued, as

fully as if it had been conveyed by the owner or owners of the same; and the valuation, if not received when tendered, may at any time thereafter be recovered from the company without costs by the said owner or owners, his, her, or their legal representatives."

It appears that, under the authority of the statute above cited, an inquisition was (upon the application of the plaintiff in error) held by the sheriff of Baltimore County, on the 13th of December, 1836, upon the lands of the defendants in error as possessed by Alexander Nesbit in the character of *trustee*, and by Penelope D. Goodwin as *cestui que trust*, and the damages assessed by the jury upon that inquisition, for the land to be appropriated to the use of the plaintiff in error, were to the said Alexander Nesbit *nothing*, and to the said Penelope D. Goodwin *five hundred dollars;* that this inquisition having been returned to the court of Baltimore County, the following order in relation thereto was made on the 24th of April, 1837: " Ordered, That this inquisition be ratified and confirmed, no cause to the contrary having been shown." Subsequently to this order of confirmation, it appears that payment of the money assessed for damages to the lands of the defendants was not tendered by the plaintiff, nor any measure whatever in relation to this inquisition adopted by them, prior to the 18th day of April, 1844, on which last day the plaintiff by its agent tendered to the defendant Penelope D. Goodwin the sum of $ 500, the principal of the damages assessed, with $ 220.42 as interest for seven years four months and five days on the amount of that assessment, making an aggregate of $ 720.42. In the mean time, between the date of the inquisition and the tender just mentioned, viz. at their December session of 1841, the legislature of Maryland passed a statute, by which they directed, " that the Baltimore County Court should set aside the inquisition found for the Baltimore and Susquehanna Railroad Company condemning the lands of Penelope D. Goodwin of said county, and that the said court direct an inquisition *de novo* to be taken, and that such proceedings be had as in cases where inquisitions in similar cases are set aside." In obedience to the statute last cited, the court of Baltimore County, upon the petition of the defendants in error, presented to them on the 26th of April, 1844, entered a rule upon the plaintiff in error to show cause, on the 11th day of May succeeding, why the inquisition should not be set aside, and an inquisition *de novo* directed as prayed for, and, after hearing counsel for and against the application, did, on the 13th of May, 1847, order and adjudge, that the inquisition returned in that case be set aside, and that hereafter the

court will upon application of the petitioners provide for the taking of an inquisition *de novo,* according to law.

The court of Baltimore County is admitted to be the highest in the State in which a decision upon this matter could be had, there being no appeal allowed from its judgment.

The plaintiff in error insists, —

1st. That, its charter being a contract between itself and the State, the act 'of 1841, having varied that contract without the assent of ·the company, was a law impairing the obligation of a contract, and therefore unconstitutional and void.

2d. That, the title to the land condemned having vested by the confirmation of the inquisition,· and the tender of the money anterior to the judgment of the Baltimore County Court under the act of 1841, this act of the legislature is unconstitutional, because it divests vested rights, and in this way impairs the obligation of contracts.

In considering the two propositions here laid down by the plaintiff in error, the first criticism to which they .would seem tō be obnoxious is this, that they assume as the groundwork for the conclusions they present, that which remains to be demonstrated by a fair interpretation of the legislative action which it is sought to impugn. For instance, with respect to the first proposition, admitting the charter of the plaintiff to be a contract, the reality and character of any variation thereof by the legislature must be shown, before it can be brought within the inhibition of the Constitution. So, too, with respect to the second charge, it must certainly be shown that there was a perfect investment of property in the plaintiff in error by contract with the legislature, and a subsequent arbitrary divestiture of that property by the latter body, in order to constitute their proceeding an act impairing the obligation of a contract.

The mode of proceeding prescribed by the fifteenth section of the charter of incorporation, for the acquiring of land and other materials for constructing the road, has been already stated. Let us now inquire by what acts to be performed by the company, and at what period of time, the investiture of such land and other property in them was to become complete, — what conditions or stipulations were imposed on the plaintiff in error as necessary to the completion of their contract. This will be indispensable in order to ascertain whether any variation of these conditions, amounting to an infraction of the contract, has been made by the Maryland legislature. After declaring that ·the inquisition, when returned, if no objection be made, ·shall be recorded, the fifteenth section pro-

Baltimore and Susquehanna Railroad Co. *v.* Nesbit et al.

vides that the *payment* or *tender* of the valuation to the owner of the land, &c., shall entitle the company to the estate and interest in the same as fully as if it had been conveyed by the owner or owners thereof. Thus it appears that it is the payment or tender of the value assessed by the inquisition which gives title to the company, and consequently, without such payment or tender, no title could, by the very terms of the law, have passed to them. Have the legislature by any subsequent arrangement abrogated or altered this condition, or the consequences which were to flow from its performance? From the period of the assessment to the 18th of April, 1844, this record discloses no evidence of any acceptance by the company of the proceedings under the inquisition, or such at least as could bind them. It can hardly be questioned, that, without acceptance by the acts and in the mode prescribed, the company were not bound; that if they had been dissatisfied with the estimate placed upon the land, or could have procured a more eligible site for the location of their road, they would have been at liberty before such acceptance wholly to renounce the inquisition. The proprietors of the land could have no authority to coerce the company into its adoption. This being the case, there could up to this point be no mutuality, and hence no contract, even in the constrained and compulsory character in which it was created and imposed upon the proprietors by the authority of the statute. This view of the matter seems to accord with the opinion of the Chancellor of Maryland in his construction of this very charter, in the case of Compton *v.* The Baltimore and Susquehanna Railroad Company, where he uses this language: " In the taking of an inquisition under this and similar statutory provisions, it must appear that the authority given has been pursued; and as under a writ of *ad quod damnum* there should be no unreasonable delay, much less could any fraudulent practice be allowed to pass without check or rebuke." 3 Bland's Chancery Reports, 391. Five years after this inquisition, during all which interval this company neglects or omits the fulfilment of the essential condition on performance of which its title depended, the legislature again interposes; and it may be asked in what respects this interposition amounted to an abrogation or variation of any contract which the legislative body itself, rather than the proprietors of the land, had been instrumental in making. We think this interposition in no respect impaired or contravened the contract alleged to have been previously existing; that it is perfectly consistent with all its conditions, and leaves the parties precisely as they stood from the passage of the charter, and at full liberty to insist upon whatever rights

or interests that law had granted. It divested no rights of property, because, as we have shown, none had been vested. This intervention was simply the award of a new trial of the proceedings under the inquisition, which proceedings were of no avail as a judgment, after such new trial was allowed. This intervention, too, was the exercise of power by the legislature supposed by that body to belong legitimately to itself; whether this authority was strictly legislative or judicial, according to the distribution of power in the State government, was a question rather for that government than for this court to determine.

What exact partition of powers, legislative, executive, or judicial, the people of the several States in their domestic organization may or should apportion to the different departments of their respective governments, is an inquiry into which this court would enter with very great reluctance.

It might seem advantageous to some of the States that the judicial and legislative authorities or functions of the government should be blended in the same body; and that the legislature should in all cases exercise powers similar to those now vested in one branch of the British Parliament, and as in some specified instances in one of the houses of our own national legislature. Should such an organization be adopted by a State, whatever might be thought of its wisdom, where beyond the body politic of the State would exist any power to impugn its legitimacy? But in truth no such inquiry regularly arises upon this record. The only questions presented for our consideration, the only questions we have authority to consider here, are, — 1st, Whether under their charter of incorporation and the proceedings therein directed, and which have been had in pursuance of that charter, the plaintiff in error has, by *contract with the State*, been invested with certain perfect absolute rights of property? And 2dly, Whether such contract, if any such existed, has been impaired by subsequent legislation of the State, by a divestiture of those rights? To each of these questions we reply in the negative; because, as has already been shown, the conditions of the charter, — conditions indispensable to the vesting of a title in the plaintiff in error, — never were in due time and in good faith fulfilled; nor, until after the new trial had been ordered by the legislature, pretended to be complied with.

If it were necessary to sustain by precedent the authority or practice of the State legislature in awarding a new trial, or in ordering a proceeding in the nature of an appeal, after litigation actually commenced, or even after judgment, and as to which provision for new trial or appeal had not been pre-

viously made, a very striking example from this court might be adduced in the case of Calder and wife *v.* Bull and wife, decided as long since as 1798, and reported in the 3d of Dallas, p. 386. The facts of that case are thus stated by Chase, Justice, in delivering his opinion : — " The legislature of Connecticut, on the 2d of May, 1795, passed a resolution or law, which, for the reasons assigned, set aside a decree of the Court of Probate for. Hartford on the 21st of .March, 1794, which decree disapproved of the will of Norman Morrison, made the 21st of August, 1779, and refused to record said will ; and granted a new hearing by the said Court of Probate, with liberty of appeal therefrom within six months. A new hearing was had in virtue of this resolution or law, before the said Court of Probate, who, on the 27th of July, 1795, approved the will, and ordered it to be recorded. In August, 1795, appeal was had to the Superior Court of Hartford, who, at February.term, 1796, affirmed the decree of the Court of Probate. Appeal was had to the Supreme Court of Errors of Connecticut, who, in June, 1796, adjudged that there were no errors."

" The effect," says this same judge, " of the resolution or law of Connecticut above stated is to revise a decision of one of its inferior courts, and to direct a new hearing of the case by the same Court of Probate that passed the decree against the will of Norman Morrison. By the existing law of Connecticut, a right to recover certain property had vested in Calder and wife in consequence of a decision of a court of justice, but in virtue of a subsequent resolution or law, and the new hearing thereof, and the decision in consequence, this right to recover certain property was .divested, and the right to the property declared to be in Bull and wife, the appellees." Upon a full examination of this case, the court being of the opinion that the resolution or law of Connecticut awarding the new trial, with right of appeal, did not fall within the technical definition of an *ex post facto* law, and there being no contract impaired or affected by that resolution, they by a unanimous decision sustained the judgment founded upon that resolution.

That there exists a general power in the State governments to enact retrospective or retroactive laws, is a point too well settled to admit of question at this day. The only limit upon this power in the States by the Federal Constitution, and therefore the only source of cognizance or control with respect to that power existing in this court, is the provision that these retrospective laws shall not be such as are technically *ex post .facto,* or such as impair the obligation of contracts. Thus, in the case of Watson et al. *v.* Mercer, 8 Peters, 110, the court say : " It is clear, that this court has no right to pronounce an

34 *

act of the State legislature void, as contrary to the Constitution of the United States, from the mere fact that it divests antecedent vested rights of property. The Constitution of the United States does not prohibit the States from passing retrospective laws generally, but only *ex post facto* laws. Now it has been solemnly settled by this court, that the phrase *ex post facto* is not applicable to civil laws, but to penal and criminal laws." For this position is cited the case of Calder *v.* Bull, already mentioned; of Fletcher *v.* Peck, 5 Cranch, 138; Ogden *v.* Saunders, 12 Wheat. 266; and Satterlee *v.* Matthewson, 2 Peters, 380. Now it must be apparent that the act of the Maryland legislature of December, 1841, simply ordering a new trial of the inquisition, does not fall within any definition given of an *ex post facto* law, and is not therefore assailable on that account. We have already shown that this law impaired the obligation of no contract, because at the time of its passage, and in virtue of any proceeding had under the charter of the company, no contract between the company on the one hand, and the State or the proprietors of the land on the other, in reality existed. We therefore adjudge the act of the legislature of Maryland of December, 1841, and the proceedings of the court of Baltimore County had in pursuance thereof, to be constitutional and valid, and order that the judgment of the said court be, and the same is hereby, affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Baltimore County Court, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Baltimore County Court in this cause be, and the same is hereby, affirmed, with costs.