## HENRY B. STACEY v. THE VERMONT CENTRAL RAILROAD COMPANY.

*Railroad company. Change in location of their road. When entitled to occupy, and when obliged to pay for land taken for their rail road.*

Where a rail road company changes the line of their road, the change operates as an abandonment, by them, of the land upon the line deviated from, so that they can no longer claim any right or interest in said land, or in any easement growing out of it.

The Vermont Central Railroad Company, under the seventh section of their act of incorporation,* derive no title to lands surveyed and designated for the use of their railroad or to any easement growing out of it, from the fact of their having so surveyed it, or by having placed their survey on record, or by having the damages appraised by commissioners and causing their award to be recorded. They must pay or deposit the money awarded before any such right accrues.

The payment or deposit of the money awarded is a condition precedent to the right of the company to enter upon the land for the purpose of constructing their road, and without compliance with it they may be enjoined by a court of equity, or prosecuted in trespass at law.

The right of the land owner to the damages awarded by the commissioners is a correlative right to that of the company to the land. If the company has no vested right to the land, the land owner has none to the price to be paid, or the damages awarded to him for it.

The defendants surveyed and located the route of their road across the land of the plaintiff, and caused his damages to be appraised, and the award of the commissioners to be recorded; and afterwards, before paying or depositing the amount awarded, altered the location of their road and thereby abandoned entirely the route across the plaintiff's land. *Held* that under these circumstances an action of debt on said award could not be maintained.

DEBT upon an award by commissioners, of the damages sustained by the plaintiff on account of his land being taken by

---

*Which is in these words, * * * * * * * Said corporation, by their officers or servants may enter upon such line or route, so to be designated as aforesaid for said road to lay out said road not exceeding six rods in width, through the whole length of said line or route; and said company may enter upon, take possession and use all such lands and real estate as may be necessary for the construction of said rail road and the accommodation requisite and appertaining to the same; and may take and hold all such grants and donations of lands and real estate, as may be made to said company, to aid in the construction, maintenance and accommodation of said road.

*Provided,* that all lands, or other real estate thus entered upon and used by said company, which have not been granted or given to said company, shall be purchased by said company from the owners of the same; and in case of a disagreement about the price of such lands, and before the making of any portion of the road thereon, any two of the judges of the supreme court, upon application for that puporse, by said company, shall appoint three disinterested commissioners to determine the damages which the owner or owners of such lands or real estate may have sustained, or shall be likely to sustain, by the occupation of the same for the purposes aforesaid, and upon the payment of the damages determined upon by such commissioners, with the costs and charges thereupon accruing, by said company, or upon said company depositing in such bank as said commissioners may direct, the amount of such damages, with the costs and charges aforesaid, to the credit of the person or persons to whom such damages and costs have been awarded by said commissioners, such bank giving notice personally, or by letter through the postoffice, to such person or persons, that such deposit has been made by said company, said company shall be deemed to be seized and possessed of all such lands or real estate as shall have been appraised by said commissioners.

the defendants for the use of their railroad. Plea, the general issue and trial by jury, May Term, 1854,—POLAND, J., presiding.

Upon the trial, the following facts appeared. After the organization of the Vermont Central Railroad Company, a survey and designation of the line or route of their road in the town of Burlington was made, and was duly recorded in the town clerk's office of Burlington, on the 5th of August, 1847. This line was across the land of the plaintiff, and in January, 1849, the commissioners who had been duly appointed for that purpose, in pursuance of the seventh section of the defendant's act of incorporation, determined and awarded that the plaintiff's damages were $——. This award was duly returned and recorded in the town clerk's office of Burlington, on the 6th day of February, A. D. 1849. No appeal was taken from it, and no part of it had ever been paid; and upon it the present suit was brought. In February, 1850, the location of defendant's road was changed in pursuance of the 15th section of their act of incorporation, and by this change, the plaintiff's land was entirely avoided. The contract, for building the road upon the line first designated, was let by the defendants prior to February, 1847, and during that month the defendants, by their contracting agents entered and commenced work upon the plaintiff's land, and continued to work there for about a month, under an arrangement with the plaintiff, that the commissioners should be called out and his damages be appraised and paid as soon as the spring opened. This work was all done at one point by excavating a short distance into a high bank. The defendant's road had since been constructed on the new or latest of the above locations. Upon this state of facts, the defendants claimed that the plaintiff could not recover, and requested the court to so charge the jury; this the court declined to do, but instructed them that upon the above facts, the plaintiff was entitled to recover, and under these instructions the jury returned their verdict for the plaintiff. Exceptions by the defendants.

*Peck & Colby* and *Phelps & Chittenden,* for the defendants.

The appraisal is not in the nature of a judgment, or an award. It is the method provided by the charter for settling the price at

which the company may become purchasers of the lands in case of disagreement on that point with the owner. Act of incorporation, secs. 7 and 15. Laws of 1843, p. 46, 49.

Unless followed by payment, no title in the land is acquired by the company, nor any right of entry for the construction of their road. Payment is a *condition precedent.*

And if before payment the company change the location in the manner authorized by their charter, and abandon the appraised land, they are not liable for the amount of the appraisal. *Bloodgood* v. *Mo. & H. R. R. Co.,* 18 Wend. 9. *Stiles* v. *Middlesex,* 8 Vt. 440. *Burkinshaw* v. *Birmingham & Oxford R. Co.,* 4 Eng. Law & Eq. Rep. 489. *B. & O. R. Co.* v. *Regina,* 4 Ib. 276. *Fiske* v. *Chesterfield,* 14 N. Hamp. *Hudson R. R. Co.* v. *Outwater,* 3 Sanf. 689. *Baltimore & Susquehanna R. R. Co.* v. *Nesbit et al.,* 10 Howard, 401. *Doe ex. dem. Carr* v. *Geo. R. & Banking Co.* 1 Kelly 532. *Stewart* v. *Raymond R. Co.,* 7 Sm. & Mar. 573.

The right to enter upon and take possession of the land prior to the appraisal is granted by the charter. The defendant's possession therefore was consistent with the charter and independent of the appraisal. Should the company begin the construction of the road before compensation made, or before appraisal and tender, the owner has ample remedy. *Rogers* v. *Bradshaw,* 20 Johns. 742. *Wheelock* v. *Young,* 4 Wend. 648. *Bloodgood* v. *M. & H. R. R. Co.,* 18 Wend. 9.

*J. Maeck* for the plaintiff.

The debt in this case has arisen out of a delegated power to the defendants to exercise the right of eminent domain, and the exercise of it upon the property of the plaintiff. That the sovereign power of the state may take private property for public use cannot be controverted, nor can it be controverted but that the owner is entitled to compensation for his property so taken. The defendants by procuring and accepting their act of incorporation became bound to perform all the duties and obligations imposed on them by it. Their acceptance constituted a contract between the corporators on one side and the government on the other, and also between the corporation on one side and the individuals whose lands might be taken for the purpose of build-

ing the road on the other. When the corporation goes so far as to take an individual's land for the purpose of building their road, and they notify him thereof, and pursue such a course as their act of incorporation prescribes, they may hold the individual's land contrary to his will for the purposes of the act, and a contract to pay him therefor exists; and though the price to be paid has not been agreed upon, yet as a tribunal to ascertain the price is provided for by law, a court of chancery will compel a performance of the contract. *Blakemore* v. *Glamorganshire Canal Navigation*, 6 Eng. Cond. Chan. 544. *Lee* v. *Milner*, 2 M. & W. 824. *Townley* v. *Ely & Lynn Railway*, 4 R. & C. Cases 516. *Stone* v. *Commercial Railway*, 1 R. & C. Cases 375. *Walker* v. *E. C. Railway*, 5 R. & C. Cases 469. The foregoing cases apply more particularly to the case where the land has been taken or a notice given of an intention to take, and no damages have been assessed to the owner; but where the land has been taken by the company, the damages assessed under their direction, the award accepted by them and placed upon the record, neither party appealing therefrom, and the company having been in possession and not attempting to abandon the land till long after the day of payment, the right of the land owner to receive and recover the amount of the award becomes a perfect, absolute, and vested right, and cannot be defeated by the act of the company or any legislative or judicial power known to the law; and in the following cases it will be seen that where the money has been paid it cannot be recovered back, or where the damages have been assessed and not paid, they may be recovered, though the land was never used by those who took it, but was abandoned. *Westbrook* v. *North*, 2 Greenl. 179. *Hampton* v. *Coffin*, 4 N. H. 517. 13 Johns. 505. 20 Johns. 299. 6 Cowen 572. *Hawkins* v. *Rochester*, 1 Wend. 53. *Harrington* v. *Comrs. of Berkshire*, 22 Pick. 263. 4 Barb. 64. Debt is sustainable in this case. *Shelburne* v. *Eldridge et al.*, 10 Vt. 123.

The opinion of the court was delivered by

ISHAM, J. This action is brought to recover damages which were appraised by commissioners, for taking the plaintiff's land for the use and construction of the Vermont Central railroad. The survey of the road was made on the 4th of June, 1847, and was

recorded in the town clerk's office, on the 5th of August in the same year. The appraisal of damages by the commissioners was made on the 5th of January, 1849, and was recorded on the 6th of February, afterwards. No appeal having been taken within ninety days, as limited by the 8th section of the charter, that appraisal has become conclusive as to the amount of damages sustained, and, if the plaintiff is entitled to recover, will prevent any further litigation of that matter.

It appears from the case also, that in February, 1850, the defendants changed their line of road by locating the same on other land than that of the plaintiff, and upon which their road has been constructed. That alteration of their line of the road has superseded . the necessity of taking the plaintiff's land on which the road was first surveyed. The right of the corporation to change the line of their road is given them by the 15th section of their charter, which provides that if the directors of that company, for any cause, shall deem it expedient, they may change the location of such parts of their road as they shall deem proper. That change in the line of their road, however, will operate as an abandonment of their former survey on the plaintiff's land, so that the company can no longer claim any right or interest in the land itself, or to any easement growing out of it, in consequence of that survey having been made. That doctrine has been expressly held in Massachusetts, in relation to highways. *Commonwealth* v. *Westborough*, 3 Mass. 406, and *Same* v. *Cambridge*, 7 Mass. 163, and the same effect, we think, will follow in cases of this character. The result is, that the plaintiff retains his land free from any incumbrance arising from that location or survey of the road. That abandonment of the line of the road over the plaintiff's land, however, does not necessarily supersede his claim for damages. The right to recover those damages, whether liquidated by the agreement of the parties or by commissioners, is not necessarily defeated by that act of the company. If the land has once been taken, if the company for any period of time, have been seized and possessed of the land so appraised, or if the plaintiff has had, at any time, a perfected right to the damages awarded by the commissioners, a subsequent abandonment of that location, and the establishment of a new line for the road, will have no effect to defeat the plaintiff's claim for

the damages which have been awarded to him.   *Westbrook* v. *North*, 2 Greenl. 179.   *Hampton* v. *Coffin*, 4 N. H., 517.   *Harrington* v. *Comrs. of Berkshire*, 22 Pick. 267.   *Hawkins* v. *Rochester*, 1 Wend. 53.   Under such circumstances the plaintiff would be entitled, on the abandonment of that location, to the land free from any incumbrance of that character, and also to the damages which were allowed to him.

The important question in the case therefore arises, whether the Vermont Central Railroad Company have ever been seized or possessed of this land of the plaintiff's, and for which the award of the commissioners was made; or has the plaintiff ever had a vested right to the damages which were awarded on that survey of the road.   The determination of these questions depends upon the construction which is to be given to the 7th section of the charter of this company.   We obviously can derive but little aid on this subject from adjudged cases in other states, unless they have arisen upon some statutory provision, embracing substantially the specific provisions of that section of this charter.   By that section it is provided, that when land or other real estate is taken by the corporation for the use of their road, and the parties are unable to agree upon the price of the land, the same shall be ascertained and determined by commissioners, together with the charges and costs accruing thereon, *and upon the payment of the same, or by depositing the amount in a bank as shall be ordered by the commissioners, the company shall be deemed to be seized and possessed of all such lands as shall have been appraised.*   This provision is quite specific in stating what act on the part of the corporation vests in them a right to the land.   They derive no title to the land or any easement growing out of it, from the fact of their having surveyed the road across the plaintiff's land, or having placed that survey on record, nor by having the damages appraised by commissioners, and causing their award to be recorded.   The statute is express, that the payment or deposit of the money according to the award must be made before any such right accrues.   Until that payment is made, the company have no right to enter upon the land to construct the road or exercise any act of ownership over the same.   A court of equity would enjoin them from exercising any such right, or they might be prosecuted in trespass at law.   The survey and appraisal of

damages are merely preliminary steps to ascertain the terms upon which the land can be taken for such purposes, if the company shall see fit to use the same for the construction of their road.    If it is accepted, and the company conclude to take the land, that acceptance, and that taking is consummated only by a payment or deposit of the money, for the use of the owner of the land, as awarded and directed by the commissioners.    The case of *the Baltimore & Susquehanna R. Co.* v. *Nesbit et al.*, 10 Howard 395 is very decisive on this question.    In that case land was taken by the company under a charter granted by the state of Maryland.    Under a provision in their charter, the damages were assessed by a jury, and that assessment was confirmed by the court.    In that case, as in this, the road was located, and the damages conclusively determined and settled, so that no further litigation could arise on that matter.    In that case, as in this also, the charter provided, that the payment, or tender of payment of such valuation should entitle the company to the estate or land as fully as if it had been conveyed.    The charter of that company and of this, in all particulars important upon this question, are substantially similar.    The court remarked, "that it is the payment or tender of the value " assessed by the inquisition which gives the title to the company, " and consequently without such payment or tender, no title could, " by the very terms of the law have passed to them."    They further observed, "that it can hardly be questioned, that without " acceptance *in the mode prescribed,* the company were not bound; " that if they had been dissatisfied with the estimate placed upon " the land, or could have procured a more eligible site for the loca- " tion of their road, they would have been at liberty, before such " acceptance, wholly to renounce the inquisition.    The proprietors of " the land could have no authority to coerce the company into its " adoption.    The same doctrine was sustained in the case of *Bloodgood* v. *Mohawk & Hud. R. R. Co.*, 18 Wend. 10, 19.    In that case the company were authorized to enter upon the land and make such examinations and surveys, as were necessary to determine the most advantageous route for the road, and to take the same for that purpose; provided, that all land so taken shall be purchased by the company of the owner, and in case of a disagreement as to the price or value of the land, commissioners were to be appointed

to determine the same, *and upon payment of such damages with the costs, or depositing the same in a bank in the city of Albany, then the corporation shall be deemed to be seized and possessed of the land so appraised.* It will at once be perceived, that the provisions of that charter are not only similar in this respect to that of the Vermont Central Railroad Company, but that they are expressed in very similar language. The chancellor remarked "that this provision "should be considered in the nature of a condition precedent, not "only to the acquisition of the legal title to the land, but also "to the right to enter and take the permanent possession of the "land for the use of the corporation." It is very clear, from these cases, that as the Vermont Central Railroad Company have never paid or deposited the amount of that award of the commissioners for the benefit of the plaintiff, as ordered by them, that the company have never acquired any right or title to the land appraised, or to any easement growing out of it; and that none can now be acquired under those proceedings. The abandonment of that location, and the adoption of a new route, and the construction of their road thereon, will prevent the acquisition of any such title, or the perfection of any such right.

It is insisted, however, that though the corporation have no right to the land, and have never been seized or possessed of the same, yet that the plaintiff, under the provisions of that act, has acquired a vested right to the damages awarded by the commissioners, and that that right became vested in him when the award was made and recorded. The statute requires "that the commissioners shall "determine the damages which the owner of the land may have sus- "tained, or shall be likely to sustain by *the occupation of the same for* "*the purposes aforesaid.*" The actual taking and occupation of the same for such purposes is the foundation upon which the binding character of that award is made to rest. It is those circumstances which the commissioners are to take into consideration in ascertaining the amount of damages. If, therefore, the land has never been taken by the company in a manner in which they can legally occupy the same, no damages have arisen, or can arise from that cause. When the corporation *obtains* a vested right to the land, or to the easement, the landholder has a vested right to the damages; that specific act which vests the right in them, gives also

a vested right to the owner of the land. These respective rights are correlative, and have a reciprocal relation; the existence of one depends upon the existence of the other. If the corporation have no vested right to the land, the owner of the land has no vested right to the price which was to be paid for it. This is the very ground upon which the cases were sustained, to which we were referred in the 2 Greenl. 179. 4 N. Hamp. 517, and 1 Wend. 53. Two of these cases were in assumpsit, and the other in debt for the recovery of a sum awarded for land taken for similar purposes. The landowner was allowed to recover his damages, and was treated as having a vested right to them; as a vested right to the ease-ment in the land had been acquired, for which those damages had been given as a compensation. That is also the doctrine of the case in the 10 Howard 395, for on that ground alone was sustained the constitutionality of the act of Maryland, in causing to be vacated the *first appraisal*, and ordering a new inquisition to be taken. As there has been no payment or tender of the damages assessed, there was no vested right to the land, and for that reason the act was held constitutional in vacating the first inquisition. On the same ground, and for that reason specifically assigned, the court in the case of *Harrington* v. *Berkshire*, 22 Pick. 267, granted a mandamus to enforce the payment of damages awarded to the landholder. The road had been laid, the title to the easement under their statute had vested, and for that reason, the party had a vested right to the damages awarded. We know of no case, neither have we been referred to any, in which such damages have been recovered, or in which the owner of the land has been considered as having a vested right to the same, when the corporation had acquired no right to the land, or to an easement growing out of it. There is no propriety or consistency in saying, that the plaintiff shall recover this compensation for land which has never been taken or purchased from him; that this company shall pay for a right or an easement, which they never had, and which they never could legally enjoy. If the line of this road had been so varied as to run over another portion of the plaintiff's land, it would hardly be contended that he would be entitled to a double compensation; yet such would be the result if this action can be sustained.

The cases in England have no definite bearing upon this subject,

nor are they in conflict with the construction we have given to the provisions of this charter. In that country, generally, the railroad is located, and its courses definitely defined, when the application is made to parliament for a charter. When a charter is granted, it is based upon that location, · and authority is granted to to take that specific land for that purpose. The owner of the land is required to specify the sum he demands for it, and if not assented to, inquisition is to be made to determine the value of the land. *Burkinshaw* v. *Birmingham & Oxford Railway Co.*, 5 Eng. Law & Eq. Rep. 492. Under those charters it has been held, that if no inquisition is made, the company are bound to pay the sum specified, and not only has payment been enforced by mandamus, but the company have, by the same process, been compelled to carry into effect all the powers delegated to them by their charter. *Blakemore* v. *Glamorganshire Canal Navigation*, 1 Mylne & Keene, 162, 163. *Regina* v. *The Eastern Counties R. Co.*, 10 Adol. & Ellis, 531. *Regina* v. *The York and North Midland R. Co.* 16 Eng. L. & Eq. R. 299. That doctrine, however, has since been overruled in the exchequer chamber, to which the last cited case was carried on a writ of error. *York and N. Midland Railway Co.* v. *Regina*, 18 Eng. L. & E. R. 206, 207, 208. Those charters are now treated as conferring conditional powers to take the land on making compensation for it. The observations of JERVIS, Ch. J., in the last case, are very appropriate and applicable to the rights of the parties under this charter: "The "company may take land; if they do they must make full compen- "sation. The words of the statute are permissive, and only impose "the duty of making full compensation to each landholder, as the "option of taking the land of each is exercised." This case as well as the case of *Burkinshaw* v. *The Birmingham and Oxford R. Co.* 4 Eng. L. & E. R. 489, establishes the correlative and reciprocal relation existing between the right of the company to the land, and the right of the owner of the land to the damages awarded. If the land has been taken in such a manner as to vest in the company a right to the use and occupancy of it, compensation is to be made; but no right to such compensation can exist, where the land has not been taken.

The authorities, upon the questions involved in this case, we

think, are more than ordinarily clear and decisive, and fully establish the principle, that the plaintiff has no claim to these damages, as the land has never been taken, or occupied by the corporation for the purposes mentioned in their charter; and that the payment of the money as awarded by the comissioners is necessary, and is to be treated as a condition precedent to the right of the company to the land, or to any easement growing out of it.

The result is that the judgment of the county court must be reversed, and the case remanded.