ANDREW M. BEVERIDGE ET AL.

v.

WEST CHICAGO PARK COMMISSIONERS.

1.  CONDEMNING LAND FOR PARKS—WHEN TITLE VESTS—RIGHT TO CONDEMNATION MONEY.—In proceedings to condemn land for public use, the party seeking condemnation acquires no vested title in the land until possession is taken and the land appropriated to the use for which it was condemned, and payment of the damages; and the land-holder acquires no vested right to the condemnation money until possession is taken by the other, and hence can maintain no action therefor before that time.

2.  RIGHT TO RELINQUISH LAND CONDEMNED.—The board of park commissioners in condemning land for park purposes, may abandon condemnation proceedings at any time before taking possession of the land.   The assessment of damages and confirmation by the court does not invest them with title to the land.

3.  INTEREST ON CONDEMNATION MONEY.—The rights of the land-owner and party seeking condemnation being correlative, and the change of title being dependent upon payment of the condemnation money, it follows that no interest can be collected for failure to pay condemnation money, for until its payment the land-owner had no vested right therein and could maintain no action therefor.

ERROR to the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.   Opinion filed November 8, 1880.

This was an action of assumpsit, brought by the plaintiffs in error against the defendants in error, to recover interest on an award for damages assessed under condemnation proceedings instituted by the defendants in error, pursuant to certain acts of the legislature creating the Board of West Chicago Park Commissioners.   A trial was had upon an agreed statement of

facts, and the court below rendered a judgment thereon for the defendant in error, from which judgment the plaintiffs bring the case to this court by writ of error.

By the agreed facts, it appears that damages to the amount of $9,924 were assessed for the taking of lands claimed by the plaintiffs in error, and on the 12th day of July, 1870, the Board of Commissioners duly ratified and confirmed the assessment, and caused a copy of the assessment roll, together with a certificate of their confirmation thereof to be filed in the Circuit Court of Cook county, as provided by the act. Afterwards, and on the 25th day of July, 1870, said assessment was duly ratified and confirmed by the court, and thereupon said land was withdrawn from taxation, and has not since been assessed for taxes; that said Park Commissioners have proceeded from year to year, since said assessment was made, to collect from property deemed benefited installments of assessments made thereon, and nearly the entire amount charged upon or apportioned to the property deemed benefited by the park improvements has been paid over to the Park Commissioners. About the sum of $600,000 has also been realized and paid over to the commissioners from the sale of bonds issued by the town of West Chicago for .the benefit accruing to the public.

Said sum of $9,924 was never deposited in court, nor paid to any person, until November 28, 1879, when it was paid to plaintiffs in error, who gave their receipt therefor, in which it was declared that they received said amount without prejudice to their right to demand, collect or receive such interest upon the amount received as they might be lawfully entitled to. It was also stipulated by the parties that the acceptance of the money should be without prejudice.

It further appears from the agreed facts, that at the time of the condemnation proceedings, the land in question was, and ever since has been vacant, unenclosed and unimproved, and that neither of the plaintiffs in error has made any use of the same, since the making of the award. That prior to July 25, 1870, a bill in chancery had been filed in the Circuit Court of Cook county, by one Mulford and others, in which a decree had been rendered, adjudging the title of plaintiff in error, An-

drew M. Beveridge, to the land in question invalid, and this decree was unreversed at the time of the condemnation proceedings; but in September, 1861, the Supreme Court reversed the same, and the case was again heard in the court below, when the title to the land was decreed to be in Beveridge, and this decree was affirmed by the Supreme Court in 1875. Elizabeth A. Beveridge acquired title to three-fifths of the land by conveyance from Andrew M. Beveridge, October 25, 1876.

Messrs. EDSALL & HAWLEY, for plaintiffs in error; that the award of damages in condemnation proceedings, when approved by the court, is treated as a judgment, and is within the terms of the statute allowing interest upon judgments recovered, cited Cook v. South Park Com'rs, 61 Ill. 115; I. & St. L. R. R. Co. v. McClintock, 68 Ill. 296; Chicago v. Palmer Ill. Sup. Ct. 1879.

Where, however, the owner remains in possession of the property, such occupancy and use are deemed an equivalent for interest: South Park Com'rs v. Dunlevy, 91 Ill. 48.

A city may abandon proceedings to condemn land for public streets: Chicago v. Barbian, 80 Ill. 482; St. L. & S. E. R. R. Co. v. Teeters, 68 Ill. 144.

But after parks and boulevards are located by the commissioners, no power is given them to abandon the proceedings and re-locate the same. Private Laws 1869, 344, § 5; 348, § 13.

As a general rule, where the legislature confers a power, and the persons upon whom it is conferred act under it, the power is exhausted. The People v. Town of Waynesville, 88 Ill. 470.

Mr. GEORGE W. SMITH, for defendant in error; that interest is not recoverable unless the land is actually appropriated, cited South Park Com'rs v. Dunlevy, 91 Ill. 49; Cook v. South Park Com'rs, 61 Ill. 115; I. & St. L. R. R. Co. v. McClintock, 68 Ill. 296; St. L. & S. E. R. R. Co. v. Teeters, 68 Ill. 144; Chicago v. Barbian, 80 Ill. 482; Chicago v. Allcock, 86 Ill. 384; Chicago v. Palmer, 93 Ill. 125.

Wilson, J.  By the acts of February 27th and April 19th, 1869, power is given to the West Chicago Park Commissioners to acquire, by purchase or condemnation, lands for parks and boulevards.  For this purpose provision is made for the assessment of the damages, by assessors to be appointed by the circuit court, in favor of those whose lands are taken or damaged, and benefits are to be assessed against those benefited by the proposed improvement, for the purpose of raising a fund to pay the damages awarded.  Section 13 of the act first named, provides as follow:  "From the funds derived from said assessments, and from the other funds of the said board, applicable to such purpose, the said board shall pay to the parties entitled thereto the amounts respectively due them, and thereupon the title to said lands, ways, building line, easements and parks, or that portion thereof so paid for, as aforesaid, shall become fixed and vested in the said board, and their successors, in the manner, to the extent, for the purpose, and subject to the limitations herein provided."

It is insisted by the learned counsel for the plaintiff in error, that when the power of selection was once exercised, there was no power in the Park Commissioners to abandon or change such selection or location, and to select other lands, either for parks or boulevards; that when the circuit court, in 1870, by its order, confirmed the action of the assessors in awarding damages, the rights of the parties were thereupon unalterably fixed and determined, and the land-owner was entitled to the damages awarded.  It is claimed that in this respect the proceedings are unlike the cases where condemnation is sought by cities or railroad corporations, which, it is said, have large powers and a large discretion.

We are unable to acquiesce in this view.  By section 5 of the act, it is provided "that the said board shall have power, and it is hereby made their duty, and they are hereby authorized, to select and take possession of, and to acquire, by condemnation, contract, donation, or otherwise, title forever, in trust, for the inhabitants of the town of the West Division of Chicago, and for such parties or persons as may succeed to the rights of said inhabitants, and for the public, as public prome-

nades and pleasure grounds, without the power to sell, alienate, mortgage or encumber the same, * * * not less than 250 feet," etc.

Section 4 provides "said Board of Commissioners shall have full and exclusive power to govern, manage and direct all parks, boulevards and ways authorized by this act, and by them purchased, made, laid out or established; to lay out, regulate, make and improve the same; to pass ordinances and issue and enforce orders for the regulation and government of the same; to levy special assessments on all property by them deemed benefited by the purchase, opening and improvement of such parks, boulevards and ways, as limited by this act; to appoint such engineers, surveyors, clerks and other officers, including a police force, as may be necessary; *and generally in regard to said parks, boulevards and ways, they shall possess all the powers and authority by law conferred upon or possessed by the common council of the city of Chicago*, in respect to public squares, places and streets in said city."

These provisions in the Park Act, are quite similar to those contained in city charters, conferring jurisdiction and control over streets and alleys, and we cannot doubt that they invest the commissioners with the same discretion which is lodged in the common council of the city of Chicago when laying out, opening or altering its streets and alleys. The Board of Park Commissioners and common council of the city, are municipal bodies within their respective limits, occupying a trust relation to the public. Their functions and powers in respect to public squares, places, streets and roadways, are wholly similar; and if by reason of a want of funds, or because the damages awarded are too large to justify the expense, the common council of the city has power to abandon condemnation proceedings at any time before taking possession of the land, and to select a different route, it is difficult to perceive any valid reason why the Park Commissioners may not do the same in relation to a boulevard. The evil to be avoided may be as actual in the one case, as in the other; and we ought not to assume that the legislature intended to tie up the hands of the Park Commissioners, and to deprive them of a discretion, the exercise of

which might be as necessary as in the case of a common coun-cil of a city, unless such intention is clearly manifested by the language of the act.

It is to be noticed that the act does not prescribe any precise route for the boulevards. It designates the territorial limits within which the improvement is to be made, and the general course of the boulevards, "with such curves and deviations as the commissioners shall deem expedient." The commissioners are thus not compelled to adopt a route already marked out by the legislature, and which, therefore, they could not abandon. They are expressly invested with a discretion in the selection of the route, and we think they also have power to abandon the route selected, as also the condemnation proceedings, at any time before taking possession of the land, if, in their judg-ment, the public interest will be better subserved by the selec-tion of another route.

The assessing of the damages and confirmation of the same by the circuit court did not invest them with the title to the land. It is the settled law of this State that cities, or other municipal corporations may, in the absence of any restrictive provisions in their charters, abandon condemnation proceedings at any time before taking possession of the lands. Hyde Park v. Dunham, 85 Ill. 569; Chicago v. Barbian, 80 Ill. 482. And the principle seems to be equally well settled that, until the party seeking condemnation has acquired a vested title to the land by taking possession and appropriating the same to his use, the landholder has acquired no vested right to the con-demnation money, and can maintain no action therefor. In South Park Commissioners v. Dunlevy, 91 Ill. 49, the court says: "The rights of the parties are correlative, the existence of the one depending on the existence of the other. When the party seeking condemnation acquires a vested right in the property, the owner has a vested right in the compensation." See, also, St. Louis & South Eastern R. R. Co. v. Teeters, 68 Ill. 144; Chicago v. Barbian, *supra.*

The Park Act provides that the title to the land "shall be-come fixed and vested" in the board, upon the payment of the money awarded to the land-owner. In other States, under

charters containing like provisions, it is held that the title only vests upon the payment. of the money, whether the party seeking condemnation has taken possession or not, and that, after taking possession, the party may abandon condemnation proceedings and the land selected, at any time before the payment of the money. In Stacey v. Vermont Cent. R. R. Co., 27 Vt. 39, the charter provided that upon the payment of the damages awarded, or depositing the same in a bank, "the company shall be deemed seized and possessed of the lands." The company surveyed and located its line across the plaintiff's land, and entered and commenced work thereon, under an arrangement with the plaintiff that the damages should be thereafter assessed. Damages were subsequently assessed, and duly confirmed. About a year afterwards, and when the work on the plaintiff's land had been nearly completed, the company abandoned its line, and located the same on lands other than that of the plaintiff, whereupon the latter brought suit to recover the damages awarded; it was held, that, notwithstanding the company had taken possession of the land, the plaintiff was not entitled to recover, on the ground that no title to the land vested in the company until the money was paid; and that until the company had acquired a vested title to the land, the owner of the land acquired no vested right to the money. In an elaborate opinion, citing many authorities, Mr. Justice Isham says: "This provision is quite specific in stating what act on the part of the corporation vests in them a title to the land. They derive no title or any easement growing out of it, from the fact of their having surveyed the road across the plaintiff's land, or having placed that survey on record, nor by having the damages appraised by commissioners and causing the award to be recorded. The statute is express that the payment or deposit of the money must be made before any such right accrues. * * * When the corporation obtains a vested right to the land, or to the easement, the land owner has a vested right to the damages; that specific act which vests the right in them, gives also a vested right to the owner of the land. These respective rights are

correlative, and have a reciprocal relation; the existence of the one depends upon the existence of the other."

The same doctrine was enunciated [in the case of the Baltimore & Susquehanna R. R. Co. v. Nesbit, 10 How. 395. And also in Bloodgood v. Mohawk & Hud. R. R. Co. 18 Wend. 10, where the charter was entirely similiar to that of the Vermont Central Company.  On the same ground, and for that reason specifically assigned, the Supreme Court of Massachusetts, in Harrington v. Berkshire, 22 Pick. 267, granted a mandamus to enforce the payment of damages awarded to the land-owner. The road had been laid and the title to the easement had, under their statute, vested in the public, and because it had vested, it was held that the party had a vested right to the damages.  To the same effect are the cases of Westbrook v. North, 2 Greenl. 179; Hampton v. Coffin, 4 N. H. 517; Hawkins v. Rochester, 1 Wend. 53.

In this State it has never been decided, so far as we are aware, that a suit can be maintained for the recovery of condemnation money awarded to a land-owner before the land has been taken possession of by the condemning party.  The actual appropriation of the land by taking possession of the same after confirmation of the award of damages, while it may not vest the title, seems to be considered by our Supreme Court, as a conclusive election to take the property, from which he cannot recede, and by which his liability to pay the damages assessed is fixed.  As the Park Commissioners had not taken possession of the plaintiffs' land before the institution of this suit, the plaintiffs had no right of action to recover the damages awarded, and if not, the claim for interest is without foundation.

Should it be urged that by the payment by the commissioners of the money awarded, the title became vested in the Park Board, and therefore a right of action became vested in the plaintiffs, it places the plaintiffs in this dilemma: If, as insisted by the defendant, the payment of the $9,924 awarded was all the commissioners were required to pay, the plaintiffs have no right to demand any more, and their action fails.  If, as is insisted by the plaintiffs, the amount is less than the commis-

sioners were required to pay, then it was only a partial payment, and the commissioners acquired no vested right to the land, and not having taken possession of the land, the plaintiffs acquired no vested right to the money, and their action equally fails.

As plaintiffs' land was unenclosed at the time of the assessment of damages, and have so continued, their use has doubtless been of very little value to the plaintiffs; but the Supreme Court have laid down a rule on this subject from which we are not at liberty to depart. They said in South Park Commissioners v. Dunlevy: "Our conclusion on this branch of the case is, that until the possession of the property has been taken, interest cannot be allowed; that so long as the owner holds the possession and use of the property, the compensation should not bear interest; in other words, that the possession and use of the property must be regarded as an equivalent for interest."

Without discussing other questions presented by the record, we are of the opinion that the judgment of the court below was correct, and the same must be affirmed.

Judgment affirmed.