## UNITED STATES v. BOUCHARD.
### No. 312.

Circuit Court of Appeals, Second Circuit.
April 17, 1933.

Ovide J. Coulombe, of Berlin, N. H., J. Rolf Searles, Arthur L. Graves, and Searles & Graves, all of St. Johnsbury, Vt. (Ira W. Thayer, of Berlin, N. H., on the brief), for appellant.

Seth W. Richardson and Aubrey Lawrence, Sp. Assts. to Atty. Gen., for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

On November 29, 1929, the United States filed a suit in the District Court of Vermont, alleging that it wished to acquire certain parcels of land on the Canadian border in that state for a Customs House. The parcels were described by metes and bounds, among them one belonging to the defendant Bouchard, who was mentioned as a defendant along with many others. The bill, or declaration concluded with a prayer to condemn the land according to law, and that all necessary orders should pass to that end. All the defendants were cited to appear, and on May 13, 1930, the court entered an order condemning all the parcels and appointing three persons as commissioners to assess their values. On July 26, 1930, Bouchard appeared, moved for leave to answer, and alleged that he had not received notice of the petition, that it was unnecessary to condemn his land, and that in any event he was entitled to an assessment by a jury. He was granted that right, and after a trial at which much testimony was taken, a jury found a verdict in his favor for over forty-four thousand dollars, on May 22, 1931. On this verdict judgment was entered on the same day; the bill of exceptions describes it as directing that Bouchard "have and recover that amount from the United States for his land and premises condemned." The judgment itself is not contained in the transcript. On September second of that year the plaintiff filed the following paper in the District Court: "Now comes the United States by Harry B. Amey, United States Attorney, and dismisses the action in the above-entitled cause wherein the jury rendered a verdict of damages against the United States." On October twenty-fourth Bouchard moved the court that this "order of dismissal" be struck from the files, which the court denied on August 19, 1932. From this order Bouchard appealed.

■ The order is not appealable unless it is final, and it is such only in case we treat it as giving consent to the plaintiff to abandon the action. It did not profess to do so; it merely denied Bouchard's motion to strike from the files the attempted dismissal, leaving the proceedings in statu quo; dismissed, if the plaintiff had power to dismiss them; subsisting, if it had not. It was not therefore appealable, and some further action is necessary to invoke our jurisdiction. Strictly, we should say no more; but it seems to us proper to indicate, though it must be obiter, how we regard the substantive rights of the appellant.

The Act of February 26, 1931 (46 Stat. 1421 [40 USCA §§ 258a–258e]), was passed while this suit was pending; it applied to existing proceedings, and provided that if the United States filed a "declaration of taking" in a condemnation suit, title should at once "vest" in it, and the landowners' right to compensation should likewise "vest." We may assume without deciding that the import of this is that after such a declaration the landowner is unconditionally entitled to an award, whether or not it is in judgment. But the United States filed no such declaration here, and the case stands as though the statute did not exist. It may be that a negative inference should be drawn from it, that in the absence of any "declaration of taking" the right of the landowner to compensation shall not "vest," but as we do not find it necessary to declare ourselves upon that, we notice it only to pass it, except to say that if so, as an Act of Congress, it is of course paramount.

■ The question as it is presented is one of Vermont law. Section 258 of title 40, U. S. C. (40 USCA § 258), provides that

in condemnation proceedings, authorized by section 237, all "practice, pleadings, forms and modes of proceedings" shall apply that are current in the state where the suit is pending. The rights acquired by a landowner through the judgment is part of the "practice" in such proceedings, and the United States by initiating a suit in Vermont subjected itself to the procedure of that state pro tanto. In cases where the statute makes title to the land pass upon payment or deposit to the credit of the landowner, yet gives the condemnor power to change the location of the public improvement, an abandonment of the original location terminates the landowner's right to sue upon a judgment recovered on an award. Stacey v. Vermont Central Ry., 27 Vt. 39. This case professed to follow Baltimore & Susquehanna Ry. Co. v. Nesbit, 10 How. 395, 399, 13 L. Ed. 469, and we think correctly. That was a case in which the constitutionality of a state statute depended upon whether a contract had been made between a railroad which sought to condemn land, and a landowner who had secured judgment on an award. The ratio decidendi was that as the railroad might still abandon the project and escape liability, the proceedings were in fieri and might be upset by a later statute. The same was ruled in Kanakanui v. U. S., 244 F. 923 (C. C. A. 9). Judge Deady said obiter in U. S. v. Oregon Ry. & Nav. Co. (C. C.) 16 F. 524, 531, that the plaintiff might withdraw the suit at any time, and Judge Pardee so held in U. S. v. Dickson (C. C.) 127 F. 774. However, the Sixth Circuit in Union Ry. Co. v. Standard Wheel Co., 149 F. 698, refused to allow a condemning railway to dismiss a suit after judgment for the landowner, and indeed said that he could recover on his judgment regardless of abandonment. The case arose under Tennessee law, which the court regarded as ambiguous; and, as to the second point, the decision stands for the opposite of the doctrine of Stacey v. Central Vermont Ry., supra, 27 Vt. 39. The reasons given by the Sixth Circuit were chiefly that to allow dismissal would permit the condemnor to begin anew when he was dissatisfied with the award, and to sue again and again until he got one which suited him. This is an obvious injustice. It is to be observed that the condemnor's inability to dismiss the suit after judgment need not involve the enforceability of the judgment itself. Conceivably the judgment might remain as an estoppel against another suit for the same purpose, and yet be no more, unless the condemnor took the property. Although this would not accord with all that was said in Union Ry. Co. v. Standard Wheel Co., supra (C. C. A.) 149 F. 698, it would effect a just result, while it left the condemnor free to abandon. We do not think it necessary here to say more than that this may be the proper disposition, and that in any event by the law of Vermont the judgment is not an absolute obligation; that it only determines the terms upon which the plaintiff must take the land, if it proceeds.

We have assumed hitherto that by the law of Vermont in such proceedings title does not pass before payment, for it was upon this assumption that Stacey v. Vermont Central Ry., supra, 27 Vt. 39, was decided; the statute there at bar being in such terms. There is no statute generally governing condemnation suits in that state, and the matter is therefore left at large, so far as concerns a suit by the United States. But there are a number of special statutes concerning condemnation. In many of these it is expressly provided that title shall pass upon payment. This is true in cases of condemnation by towns (G. L. Vt. 4160–4167), railroads (G. L. 5134–5150), public service companies (G. L. 4983–4991), and incorporated cemeteries (G. L. 4811–4817). Flowage rights are not to be exercised till payment of the award (G. L. 4838). School-houses (G. L. 1330), fire-houses (G. L. 4200), aqueducts (G. L. 4050), fall within the general town provisions. Highways may not be opened till the amount fixed by the selectman is paid (G. L. 4400), and the opening may be stayed in the event of an appeal to the county court until such time as an award is made (G. L. 4418), though payment need not be concurrent with the opening. Bridges fall within the highway law (G. L. 4513); as do sewers (G. L. 4858). Electric poles may be erected upon giving a bond (G. L. 5659). Thus, it appears to be the settled policy of that state, at least when a fee is to be taken, that title shall pass only upon payment, and if this applies to a suit to condemn by the United States, Stacey v. Vermont Central Ry., supra, 27 Vt. 39, rules. We think that it does; that such legislative expressions establish a law of the state analogous to the common-law drawn from its decisions, which may properly be carried over to situations which do not fall within the precise terms of any statute. If so, then by making proceedings to condemn conform to the practice of Vermont, the United States accepted its declared legislative policy, though it has no general condemnation law.

Thus we think that no title vested in the United States before payment, and that the landowner's judgment was not an absolute obligation, though it may be a final adjudication of the amount which it must pay, if it ever chooses to proceed.

Appeal dismissed.