UNION RY. CO. v. STANDARD WHEEL CO.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1906.)

No. 1,572.

EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—DISMISSAL—TIME.

Shannon's Tenn. Code, relating to condemnation proceedings, provides for a preliminary inquest by a jury, who, if they find for the petitioner, assess the damages sustained and report to the court, whereupon sec-

tion 1859 declares that, if no objections are made, the report shall be confirmed and the land decreed to the petitioner on payment of the damages assessed, with costs. Section 1861 gives to either party the right to appeal and have his case tried anew before a jury, and section 1863 declares that an appeal does not suspend the operations of the petitioner on the land, provided he give bond with security, etc. Section 1865 provides that the petitioner shall not enter on the land until the damages assessed and the costs have been actually paid, or, if an appeal has been taken, until a bond has been given to abide the final judgment. *Held* that, where judgment has been entered assessing the damages for land sought to be condemned for a railway right of way on the trial of an appeal taken under section 1863, the petitioner was not thereafter entitled at its election to dismiss the proceeding as to a portion of the land sought to be condemned merely because in its opinion the damages assessed were too high.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 649.]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

McFarland & Canada, for plaintiff in error.
W. A. Percy and M. C. Ketchum, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. The Union Railway Company, a Tennessee corporation, filed a petition in the circuit court of Shelby county in that state against the Standard Wheel Company, a corporation of Indiana, holding a lease of a certain tract of land on Raleigh street in the city of Memphis, for the condemnation of a portion of the leased land for the purposes of its railway. The wheel company removed the cause into the Circuit Court of the United States and there contested the proceeding. A jury of view was summoned, who reported their assessment of damages of the defendant at the sum of $2,587.50. Under a privilege given by the statute of Tennessee both parties appealed, and demanded a jury, for a trial in the common way of trial of causes in the court. At this stage of the cause the petitioner, by leave of the court, amended its petition by including a strip adjacent to the other. We are to infer that a jury of view was not summoned in respect to the new strip, as no proceeding of that kind is shown by the record. In the proceedings in the cause a distinction of the two parcels was maintained to the end, the verdict and judgment being separate as to each; that is to say, they show what sum was assessed and adjudged as damages for each. At the trial the jury assessed the wheel company's damages for the taking of the first-mentioned portion of the land at $4,000 and for the other at $6,566.40. A judgment was entered for the amount of these two sums. The railway company moved for a new trial upon several grounds, among them that the damages were excessive. The court overruled all the other grounds, but held that the damages were excessive, and required the wheel company to remit $500 from the verdict for the first tract and $2,500 of the verdict from the other. This being done, the judgment was amended and reentered. By this judgment it was by the court "ordered, adjudged and decreed that the defendant, the Standard Wheel Company, do have and recover of the petitioner, the Union Railway Company, as damages

for the taking of the thirty-four foot strip [which was the parcel brought in by the amendment of the petition] * * * three thousand, eight hundred and eighty-four and 30-100 dollars," that being the amount of the verdict, less the remittitur, with interest. In the same entry there was included a judgment for the damages in respect of the other parcel, and in the final statement of the amount of the recovery the sums allowed for each were added and judgment was rendered for the aggregate sum, and execution was awarded for the whole amount. And it was by the judgment further ordered that upon the payment of the damages so determined the right, title, and interest of the defendant in the easement thus condemned should be divested out of the wheel company, and the petitioner be put in possession. Thereupon the petitioner asked leave to dismiss its amended petition and abandon its proceedings thereon, and that the judgment be vacated so far as it goes against it for the taking of the land brought in by the amendment. The ground on which the motion was made was not stated. The motion was overruled and the petitioner excepted. The error assigned is in this ruling.

The statute of Tennessee relating to this subject provides for a preliminary inquest by a jury, who, if they find for the petitioner, assess the damages sustained by the defendants. They report to the court Thereupon it is provided by section 1859 of the Code (Shannon's Code) that:

"If no objection is made to the report, it is confirmed by the court, and the land decreed to the petitioner, upon payment to the defendants, or to the clerk for their use, of the damages assessed, with costs."

Section 1861 gives to either party the right to appeal from the finding of the jury and have his cause tried anew before a jury in the common manner of the trial of causes. Section 1863 is as follows:

"The taking of an appeal does not suspend the operations of the petitioner on the land, provided such petitioner will give bond with good security, to be approved by the clerk, in double the amount of the assessment of the jury of inquest, payable to the defendants, and conditioned to abide by and perform the final judgment in the premises."

Section 1864 authorizes a preliminary survey by the petitioner. But section 1865 provides that:

"No person or company shall, however, enter upon such land for the purpose of actually occupying the right of way, until the damages assessed by the jury of inquest and the costs have been actually paid; or, if an appeal has been taken, until the bond has been given to abide by the final judgment as before provided."

The question which we are required to determine is whether at the time when the petitioner asked leave to dismiss its amended petition, and that the judgment so far as it related to the new parcel brought in by the amendment be vacated, it had that right. The authorities quite generally recognize that the right to discontinue such proceedings at some stage of their progress exists; but there is a great divergence of opinion as to the time when the right ceases. The principal difference is in the holding that the right is ended by a final judgment fixing the damages and entitling the petitioner to take possession on

payment of them, and the holding that the right continues until he elects to take the property at the value fixed by the judgment. It would be a tedious task to canvass the great number of cases upon this subject which the industry of counsel has collected in their briefs. Many of them will be found upon examination to have turned upon the particular language of the statutes under which the proceedings were taken. But many others were decided upon general principles of justice and expediency. In the absence of any statutory provision leading to one conclusion or the other, we should be much inclined to think that the weight of reason and analogy would require that when the amount of damages to be paid the respondent has been adjudged upon a trial, and the right is adjudged to the petitioner to take the property upon payment of the damages, the obligations of the parties should be regarded as fixed. When such a proceeding is carried forward to a trial before a court and jury in the ordinary course of causes between party and party, it becomes subject to all the rules and incidents of such causes. It was because of such characteristics that the Supreme Court held in Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206, that the Circuit Courts of the United States might take jurisdiction and adjudicate the case in the same manner as in ordinary civil actions. We cannot think that the condition stated in the judgment that the damages shall be first paid is of much importance in settling the question we are considering. It results from a constitutional requirement that it should be so. It is the order required by the nature of the proceeding. Besides, an adjudication that a man have a right to a beneficial privilege upon his performing some condition, and adjudging also that he perform the condition, is no strange thing in jurisprudence. There may be cases where, subsequent to the judgment, it appears that the petitioner cannot, for reasons beyond its control, obtain or use the benefit of the judgment, as by disclosure of lack of title in the defendant, or the loss or cessation of power to use the property, the court on these facts being shown will relieve the petitioner and excuse it from compliance with the judgment. But this must be upon sufficient reasons, of which the court will judge. It is not a sufficient reason that the petitioner is dissatisfied with the price it is required to pay. Mutuality of obligation between parties to a judgment is a principle in its foundation. In such a proceeding as the present the judgment binds the defendant. He has no choice but to surrender the property at the price which is determined by the contest he has been compelled to make. If the other party is free, nothing has been gained by the defendant. He may be pursued again and again until at last the other party has got a jury to fix a price which will be satisfactory to him. The result of the abandonment is to leave things as they were at the beginning; and we are aware of no rule of law which would prevent the party from proceeding anew as in the ordinary case of voluntary dismissal or nonsuit. When a party undertakes to subject another's property to his own use, he must be deemed to be willing and intend to pay a fair price for it, and that such fair price shall be fixed by the verdict of a jury to be approved by the court. Good faith requires that he shall not use the power of the court to

vex the other party with successive experiments in the effort to get what he wants at his own price. And the public has an interest in the finality of the judgment. It will endure one litigation between parties, but not a repetition of it, to give one of them a chance to get a better result. The statute of Tennessee, whose laws we are required to administer, confirms these views in their application to the present case. By section 1863 of the Code, above cited, the petitioner may take possession of the land on the coming in of the verdict of "the jury of inquest" by giving bond "conditioned to abide by and perform the final judgment in the premises." It is true that in this case the report of a jury of inquest was waived, and the petitioner did not take possession. But this does not affect the construction of the statute, which plainly contemplates that the final judgment is to be binding upon the petitioner, and the final judgment fixes the price he is to pay. On the appeal the cause is to be tried as a cause between party and party. The jury is to assess the damages. The court is to render judgment. The defendant is bound by it, and so is the petitioner, on principle as we think, but also by force of the statute.

We are referred to no decision of the Supreme Court of Tennessee directly in point upon the construction of this statute as it affects the case in hand or upon the general principles applicable to the subject. The cases which are thought most nearly so are White v. N. & N. W. R. Co., 7 Heisk. (Tenn.) 518, and Stephens v. Duck River Nav. Co., 1 Sneed (Tenn.) 237. In the former case the railroad company had taken possession of White's land. In a suit brought by him to recover damages he obtained a judgment. Execution therein was returned nulla bona. He then brought suit to enjoin the use of the land until his damages were paid. And the court sustained him, holding that the title had not passed, and would not until the owner was compensated. The court said:

"The most that can be claimed by the appropriation is an inchoate right that may ripen into a perfect title upon the payment of the price."

Nothing was adjudged or said that is here disputed. In the case of Stephens v. Duck River Nav. Co., upon the return of the verdict of the jury assessing the damages and before the entry of the judgment, the petitioner moved to quash the proceedings for the reasons, among others, that the object for which the navigation company was organized had become impracticable and the company had abandoned the project, and, further, that a bill had been filed for its dissolution. The motion was resisted upon the ground that the defendant had acquired by the verdict of the jury a right to the damages assessed. But the Supreme Court held otherwise, and said:

"We cannot assent to this reasoning. On the contrary, we think that an utter abandonment of the contemplated scheme of improvement in good faith, at any time before the final judgment of the court upon the report of the jury, would take away the right of the party to insist upon the value of his property, and transfer of the title to the company, and leave him to recover such damages, under all the circumstances of the case, as he may have sustained by the erection of a dam during its continuance. Of course, in such case, the abandonment of the enterprise, and total removal of the cause of injury must be established by plenary evidence, and the evidence of abandonment must be of a character to be, in law, binding and conclusive upon the company."

The right to abandon the proceeding after final judgment was not in issue, and was not decided. But the facts were such as to challenge the attention of the court to the time to which the right to abandon continued, and it may well be thought that the language of the court, stating that in certain circumstances a dismissal might be allowed "at any time before the final judgment of the court upon the report of the jury," was used deliberately. The court in which the trial is to be had is one of general jurisdiction in respect to the relief it may render. In this case it rendered a judgment that the defendant recover the damages found and awarded execution, which, as we are inclined to think, though we do not decide, was a proper exercise of its authority. At all events, it was a judgment which it had power to render, and, if it erred in its exercise, the remedy was to take measures for its reversal. The petitioner, however, took the ground that it had the privilege to disregard it altogether and to demand that the court vacate the whole proceeding on its amended petition. The case of Baltimore & Susquehanna R. Co. v. Nesbit, 10 How. 395, 13 L. Ed. 469, is cited by counsel for the petitioner as an authority for the proposition that it had the right to withdraw from the proceeding at any time before it should pay the damages and take possession. In that case, Mr. Justice Daniel made use of some language, arguendo, from which, if we did not regard the statute of Maryland, such an opinion could fairly be deduced. But the case arose under a statute which did not contemplate a trial and the judgment was rendered upon an inquisition. Besides, there was no affirmative judgment in favor of the defendant that he recover the damages. The petitioner did not tender the damages, and five years after the Legislature passed an act requiring the court to set the judgment aside and direct a new inquisition as if it had itself set the verdict aside and ordered a new inquisition. The court set aside the judgment, but the petitioner did not ask for a new inquest. On the contrary, claiming that the act of the Legislature was void, the railroad company, seven years after the judgment, tendered the amount thereof, with interest. The question before the court was whether the act of the Legislature directing the vacation of the judgment was void for the reason that it impaired the obligation of the contract which it claimed to have with the state by reason of its charter in which it was given the power of eminent domain. It seems a singular contention, but it is enough to say that it did not claim to have a contract with the owner of the land. The court held the act was a valid exercise of power, that the railroad company had no contract with the state which prevented it from providing that there should be another inquisition for the damages, assuming even that the petitioner had not lost its right by its long delay in following up the judgment by tendering the damages, which the court did not admit. From this examination of the case it is apparent that it decides nothing in conflict with the views we have expressed. The radical difference between an inquest and a trial would be of itself sufficient to distinguish it.

We think the court did not err in denying the motion; and its order is affirmed, with costs.