**MOODY v. WICKARD, Secretary of Agriculture, et al. (UNITED STATES, Intervenor).**

**No. 8449.**

United States Court of Appeals for the District of Columbia.

Argued June 14, 1943.

Decided June 30, 1943.

Messrs. John Wattawa, of Washington, D. C., and G. Lyle Jones, of Asheville, N. C., for appellant.

Mr. Roger P. Marquis, of Washington, D. C., with whom Messrs. Norman M. Littell, Assistant Attorney General, and Vernon L. Wilkinson, of Washington, D. C., were on the brief, for appellees.

Before GRONER, Chief Justice, and MILLER, Associate Justice, and EICHER, Chief Justice of the District Court.

GRONER, C. J.

Appellant Moody brought this proceeding in the United States District Court for the District of Columbia against the Secretary of Agriculture and the Secretary of the Treasury for a mandatory injunction to enforce payment of a judgment obtained by him against the United States in a condemnation proceeding in the District Court for the Western District of North Carolina. The Secretaries severally answered and the United States, with the permission of the court, intervened.[1] The trial court made findings of

---

[1] The answers of the Secretaries alleged that there were no funds available to pay the judgment, that the acquisition of the land at the price awarded per acre had not been approved by the National Forest Reservation Commission and that equitable relief by mandamus should be denied. The complaint of the United States in intervention alleged that Moody had breached a contract to accept

fact and, without opinion, concluded that the North Carolina judgment against the United States was valid and res adjudicata as to the claims of the United States, but held that it had no authority to grant the injunctive relief requested and dismissed both petitions. Moody and the United States appealed.

The controversy arose under these circumstances: In December, 1934, Moody, owner of approximately 1400 acres of land in Macon County, North Carolina, at the instance of the National Forest Reservation Commission, gave the United States a sealed option to either purchase the land within six months at $4.00 per acre, or, in the event that Moody's title was unsatisfactory to the Attorney General, to institute condemnation proceedings. The agreement further provided that pending the vesting of title the United States should have the right to occupy and use the land for national forest purposes. In January, 1935, the United States exercised the option, notified Moody accordingly, and went into immediate possession. It subsequently developed that Moody's title was not satisfactory to the Attorney General, and condemnation proceedings were begun August 21, 1936, under the general condemnation statute.[2]

The petition of the United States was in the usual form except that it contained a statement that Moody had executed and delivered an option to the United States at the price stated therein. Moody answered the petition, admitted the execution of the option contract, but denied its force and effect on the ground that it had expired at the time of the institution of the proceeding. So far as the record discloses, the option contract was that then called to the North Carolina court's attention, and at this stage of the proceeding does not appear to have been noticed, but in the usual course of events Commissioners were appointed and the value of the land fixed at $4.00 per acre. Moody excepted to the award and demanded a jury trial, to which, under the provisions of the North Carolina statute, he was entitled.[3]

A jury was thereupon impaneled and determined the value of the land to be $6.00 per acre. Thereafter the United States filed a motion to be permitted to abandon the proceeding. Before this motion had been acted upon, the Court of Appeals for the Fourth Circuit decided the case of Wachovia Bank & Trust Co., Guardian, v. United States of America,[4] in which it was held, on similar facts, that a landowner who had executed an option to sell at a named price per acre, with the right in the Government to condemn if title should be found to be unsatisfactory, was bound in the condemnation by the price named in the option. Relying on this holding, the United States withdrew their motion to abandon and requested that the court set aside the award of $6.00 per acre and enter judgment for $4.00 in accordance with the option contract price. The court granted the request to withdraw the motion to abandon, but declined to consider the effect of the Wachovia decision after finding as a fact that the exceptions originally filed by the United States to the verdict of the jury had been submitted on the single question of the value of the property, and that no evidence had been introduced to show that the Government had accepted the property under the terms of the option. The court thereupon held that the sum of $6.00 per acre was a fair and reasonable price for the property, and finding that the United States were in possession of the property and had used it for their own purposes, further held that Moody was entitled to recover the full amount awarded by the jury. Judgment was accordingly entered that the United States were owners of the land in fee simple and that Moody recover $6.00 per acre, with interest at six per cent (6%) from the date of the verdict.

In the view we take the decision here turns upon whether the District Court in North Carolina, in the circumstances outlined, had jurisdiction to enter the judgment it did against the United States. As has been seen, the order was a personal judgment against the United States for the payment of money. We think, con-

---

$4.00 per acre in full payment of the land, to the damage of the United States of the difference between $4.00 and $6.00 per acre, the amount of the condemnation award.

[2] Act of August 1, 1888, 25 Stat. 357, as amended by the Act of March 3, 1911, 36 Stat. 1167, 40 U.S.C.A. §§ 257, 258.

[3] N.C.Code (1939), § 1724. Durham v. Rigsbee, 141 N.C. 128, 53 S.E. 531.

[4] 98 F.2d 609.

803

trary to the view of the court below, there can be no doubt that unless the statute under which the condemnation was brought specifically authorized such a judgment it is void and unenforceable, notwithstanding the failure of the United States to take an appeal therefrom. United States v. United States Fidelity & Guaranty Co., 309 U. S. 506, 513, 60 S.Ct. 653, 84 L.Ed. 894. This follows from the well established principle that jurisdiction to sue the United States or to enforce the withdrawal of money from the Treasury must rest upon an Act of the Congress. Haskins Bros. & Co. v. Morgenthau, 66 App.D.C. 178, 85 F.2d 677; United States v. United States Fidelity & Guaranty Co., supra.

As has already been said, the condemnation here was under the general condemnation statute, 40 U.S.C.A. §§ 257, 258. This statute nowhere permits an officer of the United States to consent to the entry of a money judgment against the Government. United States v. Boston C. C. & N. Y. C. Co., 1 Cir., 271 F. 877[5]. In Danforth v. United States, 308 U. S. 271, 60 S.Ct. 231, 84 L.Ed. 240, the Supreme Court said that the determination of an award in condemnation is an offer subject to acceptance by the condemnor. The judgment entered is conditional only. The Government gets no title until payment, Hanson Lumber Co. v. United States, 261 U.S. 581, 587, 43 S.Ct. 442, 67 L.Ed. 809, and if the award is for more than it is prepared to pay, the proceeding may be abandoned at any time before payment and transfer of title. Barnidge v. United States, 8 Cir., 101 F. 2d 295; United States v. Bouchard, 2 Cir., 64 F.2d 482; Kanakanui v. United States, 9 Cir., 244 F. 923.

There is nothing in the Weeks Forestry Act, 16 U.S.C.A. § 515 et seq., which was the authority for the acquisition of this land, which alters these principles. The only reference to condemnation there authorizes the Secretary of Agriculture to pay the award into court when advised by the Attorney General that the proceedings and decree are regular. 16 U.S.C.A. § 517a.

It is obvious that Judge Webb, who entered the judgment in the condemnation proceeding, recognized the general rule which we have set out, but undertook to avoid its effect on the theory that in the present case the Government had committed itself unconditionally by taking the property and appropriating it to its use. However, we are of opinion that these circumstances in combination do not change the general rule. It is not necessary that compensation be made at the time of or in advance of the taking of the land, and the Government has power to take the land without bringing condemnation proceedings at all. Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637. It is only necessary that payment be made at the time of the taking of title. These principles were applied in Cherokee Nation v. Southern Kan. R. Co., 135 U.S. 641, 659, 10 S.Ct. 965, 972, 34 L.Ed. 295, where the Supreme Court held that the entry of the condemnor before payment was constitutional, saying:

"* * * the title does not pass until compensation is actually made to the owner. Within the meaning of the Constitution, the property, although entered upon * * * is not taken until the compensation is ascertained in some legal mode, and, being paid, the title passes from the owner."

The power of the United States to thus use the land is supported in this case by the fact that they went into possession under a contract which provided that "pending vesting of title to said lands in the United States, the United States, if electing to do so, shall upon acceptance of this option * * * use, occupy, and administer, for the purpose of national forests * * * any or all lands herein described * * *."

The application of these principles does not foreclose the landowner's right to recover from the United States any compensation or damage to which he may be entitled as the result of the events we have described. He has his remedy by suit under the Tucker Act, 28 U.S.C.A. § 41(20). Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.

---

[5] Compare 40 U.S.C.A. § 258a and D.C.Code (1940), § 16—628, which provide for the transfer of title upon the filing of a declaration of taking and the deposit in court of the estimated compensation, and permit the entry of a judgment against the United States for any excess amount awarded. Lee v. United States, 61 App.D.C. 153, 58 F.2d 879.

L.R. 1; Hurley v. Kincaid, supra; United States v. Meyer, 7 Cir., 113 F.2d 387. That question is not before us in this proceeding and hence we do not decide it.

■ Enough has been said, we think, to show that the United States were free to abandon the condemnation proceeding at any time before payment of the award and transfer of title, that they took no title until payment, that the possession of the land by the United States did not make these rules inapplicable, and therefore that the District Court in North Carolina had no authority to enter a personal judgment against the United States.

In view of the foregoing, it is unnecessary to consider any of the questions raised on the complaint in intervention. The judgment of the District Court is affirmed for the reasons and on the grounds stated herein.

Affirmed.