## STATE OF NEW MEXICO et al. v. BACKER et al.

### No. 4453.

United States Court of Appeals
Tenth Circuit.

Oct. 22, 1952.

Quincy D. Adams, Albuquerque, N. M. (Claron E. Waggoner, Socorro, N. M., on the brief), for appellants.

Fred W. Smith, Atty. Dept. of Justice, Washington, D. C. (Ralph J. Luttrell, Acting Asst. Atty. Gen., Maurice Sanchez, U. S. Atty., Albuquerque, N. M., and Roger P. Marquis, Atty. Dept. of Justice, Washington, D. C., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The State of New Mexico and the City of Truth or Consequences brought this action in the District Court of Sierra County New Mexico, against Labon Backer, acting construction engineer in charge of the Elephant Butte Dam and Reservoir, and certain employees of the United States Bureau of Reclamation, to restrain them from reducing the water level of the reservoir to a point which would destroy the fish in the reservoir and create a health menace to the people of the City of Truth or Consequences. The state court granted a temporary injunction as prayed for. Backer removed the action to the United States District Court for the District of New Mexico under the provisions of 28 U.S.C.A. § 1442. Upon motion, all of the defendants who were served were dismissed from the action except Backer. After a hearing, Backer moved to dismiss the action upon the grounds that the action was a suit against the United States and that the Secretary of the Interior was an indispensable party. By amendment, the Secretary of the Interior was made a party but was never legally served with process. The court dismissed the action upon the grounds that the Secretary of the Interior was an indispensable party.

In substance, the amended complaint alleges that Backer is an employee of the United States Bureau of Reclamation in

charge of the Elephant Butte Dam and Reservoir in Sierra County, New Mexico; that the reservoir contains fish belonging to the State of New Mexico; that the reservoir has long been a fishing resort and place of recreation for citizens of New Mexico, particularly for the people of the City of Truth or Consequences, and is of great economic importance; that the reservoir has been drained to such a level that many of the fish have died and the value of the reservoir for recreational purposes has been impaired; and that further drainage is threatened which would cause more fish to die and create a health menace to the people of the City of Truth or Consequences from which irreparable damage would result. The prayer of the complaint was for temporary and permanent injunctions against further drainage. Pending final hearing the Federal District Court continued the temporary restraining order entered by the state court but made modifications which permitted the withdrawal of additional water for irrigation and power purposes. The last of these orders authorized the reduction of water in the reservoir to 15,000 acre feet provided no health menace developed as a result. The irrigation season was completed without further change.

The dam and reservoir is an integral part of the reclamation project known as the Rio Grande project which was undertaken and constructed by the United States under the provisions of the reclamation laws of the United States and the amendatory laws thereto, 32 Stat. 388, 43 U.S.C.A. § 371 et seq. The purpose of the project which could be accomplished only by the storage of water of the Rio Grande River, was to supply water to fulfill the obligations of a treaty entered into with the Republic of Mexico, Convention of May 21, 1906, 34 Stat. 2953, and to irrigate approximately 200,000 acres of arid land in New Mexico and Texas. The treaty with Mexico requires the United States to deliver to Mexico at a designated point 60,000 acre feet of water annually. The treaty also provides that if continued drouth caused a reduction in the use of water in the United States, the delivery requirements of the treaty would be reduced in the same proportion. Pursuant to the reclamation laws, the Secretary of the Interior appropriated all the unappropriated waters in the Rio Grande River and entered into contracts with irrigation districts in New Mexico and Texas which comprised the project lands. These contracts required delivery of the water as specified in the contracts. Thereafter the United States constructed plants on the project for the generation of electric power and the districts, in consideration of a reduction of project costs chargeable to them, conveyed to the United States all their right, title and interest in the use of the dam and other project works including the project water supply for the development of electricity. The United States had entered into numerous contracts for the sale of electric power which was developed on the project. The entire irrigation works, together with the power installations and transmission lines, were owned and operated by the United States. Backer was an officer of the United States in charge of all of the installations. There is no suggestion in the pleadings or the evidence that his duties were not those prescribed by the United States in conformity with valid statutes. Part of his duties was the release of water from the reservoir to meet the obligations of the United States for the supply of irrigation water and electricity, and to meet the treaty obligations of the United States with the Republic of Mexico. We have no doubt but that the enjoining of government officials in this case interferes with the management and control of property of the United States and raises questions of law and fact upon which the United States would have to be heard.

█ It is settled law that the United States cannot be sued without its consent. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; Moody v. Wickard, C.A.D.C., 78 U.S.App.D.C. 80, 136 F.2d 801, certiorari denied 320 U.S. 775, 64 S.Ct. 89, 88 L.Ed. 465. It is equally well settled that whether an action is one against the sovereign is determined not by the party named

as defendant, but by the result of the judgment or decree which may be entered. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628; State of Louisiana v. Garfield, 211 U.S. 70, 29 S.Ct. 31, 53 L.Ed. 92; State of Louisiana v. McAdoo, 234 U.S. 627, 34 S. Ct. 938, 58 L.Ed. 1506; State of Oregon v. Hitchcock, 202 U.S. 60, 26 S.Ct. 568, 50 L.Ed. 935; State of Minnesota v. Hitchcock, 185 U.S. 373, 22 S.Ct. 650, 46 L.Ed. 954.

The Rio Grande Reclamation Project was constructed and operated in the exercise of a proper governmental function and in accordance with valid statutes of the United States. The facilities were owned by the United States and the waters were stored in the reservoir to be withdrawn by the United States for authorized governmental purposes. The management, control and operation of such facilities are given the Secretary of the Interior in broad terms, 43 U.S.C.A. § 373. The United States could not hold or operate this vast project except through its officials and agents. Backer was performing these functions for the Secretary of the Interior and under his instructions. Whatever he did, he did for the Secretary under authority of the reclamation laws of the United States. The operation of the project and facilities depended upon the flow of water from the reservoir. If this flow could be enjoined or affected by court decree or order directed to Backer, he would be under the direction of the court and not his superiors as representatives of the United States. It would be a complete ouster of the United States over the control and management of its own property and facilities.

In Larson v. Domestic and Foreign Corporation, supra [337 U.S. 682, 69 S.Ct. 1462], the Supreme Court examined the entire body of its decisions upon this subject and we think undertook to adopt the formula to be used in determining when an action against a government officer is in fact one against the United States. It set forth two types of cases which it stated that the Court had frequently recognized as being "the only ones in which a restraint may be obtained against the conduct of Government officials." The first of these is that class of cases where the officer is acting beyond his delegated power. The other is that class where the statute or order conferring power upon the officer to act in the sovereign's name is unconstitutional or otherwise invalid.

The appellants do not contend that the present case falls within either of these two classes. There are no allegations in the complaint or any evidence that Backer was acting unconstitutionally or pursuant to any unconstitutional grant of power, nor is there any allegation or claim that Backer was acting beyond his delegated power when he permitted water to be drained from the reservoir. Normally his powers required him to release water through the dam to meet the contractual and treaty obligations of the United States.

The basis of the appellants' theory seems to be that there exists a third class of cases in which the action of a governmental official may be restrained or directed. It is urged that the compulsory powers of the courts may be exercised against a governmental officer when his acts are tortious or in violation of a state law. We think the Larson case disposes of this contention. It rejects the claim that the action of a government official may be enjoined without the presence of the United States if the acts are tortious or illegal unless the illegal action is within the named classes. In other words, the illegal action must be in the sense that the official is acting beyond his lawful authority and that his acts are not the acts of the sovereign. There it was said: "Since the sovereign may not be sued, it must also appear that the action to be restrained or directed is not action of the sovereign. The mere allegation that the officer, acting officially, wrongfully holds property to which the plaintiff has title does not meet that requirement. True, it establishes a wrong to the plaintiff. But it does not establish that the officer, in committing that wrong, is not exercising the powers delegated to him by the sovereign. If he is exercising such powers, the action is the sovereign's and a suit to enjoin it may not be brought unless the sovereign has consented."

Appellants say that Ickes v. Fox, 300 U. S. 82, 57 S.Ct. 412, 81 L.Ed. 525, disposes of the claim that the United States is an indispensable party to this action. In the Larson case it became necessary for the court to consider prior decisions which appeared to be in conflict with the holding there. It was stated that it was not an easy matter to reconcile all of the decisions of the court upon the subject. Among those which were cited as being in conflict or inconsistent with the principle announced was Ickes v. Fox. In discussing that case the court said that the ground for the decision was not altogether clear but the court clearly indicated that if the Fox decision permitted injunctive relief against a public official in a class of cases other than those named, it must be rejected along with Goltra v. Weeks, 271 U.S. 536, 46 S. Ct. 613, 70 L.Ed. 1074 and others.

This is not an action to restrain the unauthorized act of a public official or an action based upon an unconstitutional or invalid statute or order, but is an attempt to restrain an official exercising valid governmental authority by virtue of his office. It is in essence a suit against the United States to which it has not consented and it therefore must fail. Larson v. Domestic and Foreign Corp., supra; Morrison v. Work, 266 U.S. 481, 45 S.Ct. 149, 69 L.Ed. 394; Goldberg v. Daniels, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191; Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; Belknap v. Schild, 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599; Ferris v. Wilbur, 4 Cir., 27 F.2d 262.

Judgment is affirmed.