UNITED STATES v. SOUTHERLY POR-TION OF BODIE ISLAND, N. C. et al.

UNITED STATES v. CERTAIN LANDS ON HATTERAS ISLAND, N. C. et al.

UNITED STATES v. CERTAIN LANDS IN OCRACOKE TOWNSHIP, HYDE COUNTY, N. C. et al.

Nos. 262, 263, 266.

United States District Court
E. D. North Carolina, Elizabeth City Division.

June 15, 1953.

428

swers, and the proceedings were consolidated for hearing on that motion.

The portions of the answers to which plaintiff directs its motions are substantially similar and may be summarized as follows: (1) The taking is not for a public use; (2) there has been no compliance with alleged conditions precedent in the statute authorizing the project in that (a) the boundaries of the project have not been designated by the Secretary of the Interior, (b) there has been no attempt to purchase the lands of defendants, (c) the Cape Hatteras National Seashore Recreational Area has not yet been established, (d) all lands for the project have not been acquired by the United States within 15 years from August 17, 1937; (3) defendants' lands are not necessary for the completion of the Recreational Area; (4) the taking is a denial of due process of law in that defendants were not given notice and afforded an opportunity to be heard prior to the institution of the cases; and (5) sufficient funds are not available to pay the awards of just compensation for the taking of the lands.

Clyde E. Gooch, Trial Atty., Office of United States Atty., Salisbury, N. C., Robert MacLeod, U. S. Department of Justice, Washington, D. C., for plaintiff.

L. P. McLendon, Greensboro, N. C., and W. A. Worth, Elizabeth City, N. C., for defendants.

GILLIAM, District Judge.

These are eminent domain proceedings which were brought under the authority conferred by the Act of August 17, 1937, as amended, 16 U.S.C.A. § 459 et seq., and the Act of August 1, 1888, as amended, 40 U.S.C.A. § 257 et seq. The lands proposed to be condemned are for use in connection with the Cape Hatteras National Seashore Recreational Area.

In each of the proceedings the defendants filed answers objecting to the condemnation and asking dismissal of the plaintiff's complaint. Plaintiff entered its motion to strike certain portions of each of the an-

The purpose of plaintiff's motion to strike is to gain an early adjudication by the Court as to the legal sufficiency of defenses set forth in the answers of defendants. That purpose is among those contemplated for the use of the motion. Rules 12(b) and (f), F.R.C.P., 28 U.S.C.A. While for purposes of such motions, the well pleaded facts must be accepted as true, the motions do not admit mere conclusions of law, nor conclusions of fact or of law and fact. Barnidge v. United States, 8 Cir., 101 F.2d 295, 296.

We now proceed to treat with each of the several defenses raised by the defendants in their answers.

It is alleged that the use is not public and that the taking is not authorized or constitutional. While the question of public use is admittedly a judicial question, it is nevertheless well settled that the condemnation of property for park purposes is a taking for a public use and is constitutional. Shoemaker v. United States, 147 U.S. 282, 297, 13 S.Ct. 361, 37 L.Ed. 170.

"Public uses are not limited, in the modern view, to matters of mere business necessity and ordinary convenience, but may extend to matters of public health, recreation and enjoyment. Thus, the condemnation of lands for public parks is now universally recognized as a taking for public use." Rindge Co. v. Los Angeles, 262 U.S. 700, 707, 43 S.Ct. 689, 693, 67 L.Ed. 1186.

■ Defendants contend that there has been no compliance with alleged conditions precedent in the authorizing Act. The Act provides that: "When title to all the lands * * * within boundaries to be designated by the Secretary of the Interior * * * shall have been vested in the United States, said area shall be, and is hereby, established, dedicated, and set apart as a national seashore recreational area for the benefit and enjoyment of the people * * *", and that "such lands shall be secured by the United States only by public or private donation." The Act authorized the Secretary of the Interior to accept donations of lands within the boundaries designated and funds for the purchase and maintenance thereof, and provided "That he may acquire on behalf of the United States under any donated funds by purchase, when purchasable at prices deemed by him reasonable, otherwise by condemnation under the provisions of sections 257 and 258 of Title 40, such tracts of land within the said national seashore recreational area as may be necessary for the completion thereof." 16 U.S.C.A. §§ 459, 459a.

It is further provided in section 459a–2 of the Act "that the Secretary of the Interior may, in his discretion, accept for administration, protection, and development by the National Park Service a minimum of ten thousand acres within the area described in section 459 * * * if the State of North Carolina shall agree that if all the lands described in section 459 of this title shall not have been conveyed to the United States within fifteen years from August 17, 1937, the establishment of the aforesaid national seashore recreational area may, in the discretion of the said Secretary, be abandoned, and that, in the event of such abandonment, the said State will accept a reconveyance of title to all lands conveyed by it to the United States for said * * * area."

It is the view of this Court that the provisions of the Act referring to the establishment of boundaries, the right of the authorized officer to purchase the property if prices are deemed reasonable by him, the abandonment of the project in the discretion of the Secretary of the Interior 15 years after August 17, 1937, and the ultimate establishment of the Recreational Area do not in any manner constitute conditions precedent to the institution of condemnation proceedings pursuant to the Act. If Congress had intended to impose the suggested conditions upon the powers of the Secretary of the Interior, then it would have employed such phraseology as would clearly have defined such conditions. And in the absence of such phraseology in the Act, "we cannot read into it limitations not clearly indicated by Congress." United States v. Meyer, 7 Cir., 113 F.2d 387, 391, certiorari denied 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459. The same principle was earlier stated in Re Condemnations for Improvement of Rouge River, D.C., 266 F. 105, 119, as follows: "* * *. when, as here, the United States is the condemning party, its power to take property is not qualified by a condition precedent, such as the duty to first exhaust its efforts to purchase such property unless such condition be affirmatively shown to have been expressly imposed upon its right to exercise that power."

■■ Defendants allege that their lands are not necessary for the completion of the Recreational Area. This allegation is apparently directed at the wisdom of the Secretary of the Interior in his decision to include the defendants' lands within the established boundaries of the Area. In the absence of bad faith and non public use, it would seem that the wisdom of a government officer authorized to commence condemnation proceedings does not present a judicial question and is not subject to judicial review; for by the language of the

430

Act he may commence such proceedings "whenever in his opinion it is necessary or advantageous * * *." 40 U.S.C.A. § 257. Hence, it is his opinion and not the opinion of the Court that is controlling. The question of bad faith, as distinguished from bad judgment, is not here presented. To allege bad faith a party must charge facts rather than conclusions, and such facts must suggest actual malevolence by the officer towards the complaining party. United States v. 40.75 Acres of Land, D.C., 76 F.Supp. 239, 249.

It is urged as a defense that due process of law has been denied in that no notice was given which might afford an opportunity to be heard before the institution of these proceedings. Clearly, there is no merit in this contention. Neither notice nor an opportunity to be heard is a prerequisite to the exercise of the power of eminent domain. State of Georgia v. City of Chattanooga, 264 U.S. 472, 483; 44 S.Ct. 369, 68 L.Ed. 796. Bragg v. Weaver, 251 U.S. 57, 58, 40 S.Ct. 62, 64 L.Ed. 135.

Finally, it is urged as a defense that funds are not available for the payment of awards of just compensation for the lands of the defendants. This is no defense. United States v. Gettysburg Electric R. Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576; Moody v. Wickard, 78 U.S.App.D.C. 80, 136 F.2d 801, certiorari denied 320 U.S. 775, 64 S.Ct. 89, 88 L.Ed. 465. In Barnidge v. United States, supra, 101 F.2d at page 298, it is stated: "But we think it is not a condition precedent to the right to maintain condemnation proceedings that funds for payment of award shall be available. In condemnation proceedings, title to the property does not ordinarily pass until full compensation has been paid, as well as ascertained. The purpose of the condemnation proceedings is to determine and fix the amount which must be paid for the property, if and when the Government decides to take title."

All of the objections of the defendants now having been found to be insufficient in law, it is concluded that the plaintiff's motions to strike should be granted in full; and the plaintiff's counsel will prepare an order consistent herewith.