294 P.2d 628

**ELEPHANT BUTTE IRRIGATION DIS-TRICT OF NEW MEXICO, Appellee,**

**v.**

**John GATLIN and J. J. Sadosuk (Raymond H. Hunter, joined here by revivor in name of J. J. Sadosuk, deceased), Appellants.**

**No. 5938.**

Supreme Court of New Mexico.

Feb. 27, 1956.

Rehearing Denied March 22, 1956.

---

Paul F. Larrazolo, U. S. Dist. Atty., Albuquerque, William H. Veeder, U. S. Sp. Asst. Atty., J. Lee Rankin, U. S. Asst. Atty. Gen., for appellants.

Edwin Mechem, J. D. Weir, Las Cruces, for appellee.

LUJAN, Justice.

This case is before us on appeal by the defendants from the refusal of the trial court to dismiss plaintiff's action for lack of indispensable parties (the United States of America and the Secretary of the Interior) and from a judgment enjoining the defendants (subordinate officials of the United States Department of Interior) from diverting and using any of the waters of the Rio Grande upon the Bosque del Apache National Wildlife Refuge in Socorro County, New Mexico, which injunction has, upon bond, been stayed pending this appeal.

We are concerned solely with the jurisdictional question raised by defendants "that the injunction entered will expend itself upon the United States of America, its properties and its administration; that the United States of America has not consented to be sued; that it is an indispensable party and is not before the court."

To bring the contentions of the parties into focus it will be helpful to review as briefly as possible the pleadings and decision of the lower court.

The complaint alleges the water users of the plaintiff irrigation district are beneficial owners of valuable water rights in the waters of the Rio Grande and have the right to store large quantities of water in the Elephant Butte and Caballo Dams on said river and divert water from the river for irrigation of their lands; that all of the waters of the river in New Mexico have been appropriated; that defendants are unlawfully diverting water from the river above Elephant Butte Dam and applying it to irrigate land on the Bosque del Apache Grant, which land has no water rights of any character in the waters of the river; that the unlawful diversion of the waters operates to diminish and deplete the natural flow of the river into Elephant Butte Reservoir and diminishes the supply of water available to the water users of the plaintiff; that unless the defendants be restrained from making such unlawful diversion, plaintiff and its water users will suffer great and irreparable damage and that plaintiff is without a speedy and adequate remedy at law. A second cause of action is predicated upon alleged unlawful impounding of waters of the Rio Grande on the lands of the Bosque del Apache Grant by the defendants for the purpose of affording bird refuges and attempting to kill salt cedars and other growth upon the land.

The answer of the defendants alleges their status as officials of the Department of Interior; that the acts complained of were done in their official capacity; that they have no personal interest in the suit and claim, as individuals, no right, title or interest to the wildlife refuge established on the lands of the Bosque del Apache Grant. The principal allegations of the complaint are denied. The answer was followed by defendants' motion for summary judgment of dismissal upon the ground of lack of indispensable parties. Following denial of this motion trial was had upon the merits at the conclusion of which judgment was entered for the plaintiff enjoining diversion of water from the Rio Grande by the defendants. The lower court's findings of fact are extensive and are incorporated in following paragraphs.

History and Interest of Plaintiff District

The Elephant Butte Irrigation District of New Mexico was organized by water users on the Rio Grande Project for the purpose of providing irrigation of their lands in cooperation with the United States under the Federal Reclamation Laws. Pursuant to the Reclamation Act of 1902, 32 Stat. 388, construction of a dam on the Rio Grande was authorized. Thereafter, the Secretary of Interior formed the Rio Grande Reclamation Project, comprising part of what is known as the Elephant Butte Irrigation District and certain lands in Texas being part of the El Paso County Water Users' Association No. 1. The Secretary entered into contracts with the associations representing the Texas and New Mexico landowners, which contracts provided for repayment of construction costs, etc. The Bureau of Reclamation constructed Elephant Butte Dam near Engle, New Mexico, and other storage or diversion dams and irrigation works to be used for application of the water to beneficial use upon the lands within the project and for the delivery of 60,000 acre feet of water annually to Mexico under treaty with the United States proclaimed January 16, 1907, 34 Stat. 2953.

There are, at the present time, 90,476.61 acres of land within the plaintiff district receiving water from Elephant Butte Dam for irrigation purposes. The district landowners have repaid to the United States roughly three-fifths of the district's share of construction costs of the irrigation project.

To properly irrigate the lands of the district, the Texas association and to fulfil the Mexican treaty obligations, it is necessary to release annually from Elephant Butte Dam 790,000 acre feet of water. Beginning in 1951 and continuing to the time of trial drought conditions have resulted in a shortage of water in the dam. In 1953, when judgment was entered herein, there was available for use only 408,100 acre feet of water.

History and Interest of the United States
in Bosque del Apache Refuge
and Wildlife Preserve

The lands of the Bosque del Apache Grant, as well as the water rights appurtenant to some 6,780 acres thereof, were acquired by the United States pursuant to condemnation proceedings and are a part of or constitute that property of the United States known and established as the Bosque del Apache National Wildlife Refuge by Executive Order of November 22, 1939, to further effectuate the purposes of the Migratory Bird Conservation Act, 45 Stat. 1222, and in keeping with obligations of the United States under the Convention between the United States and Great Britain for the protection of migratory birds proclaimed December 8, 1916, 39 Stat. 1702, and a comparable Convention with the United Mexican States proclaimed March 15, 1937, 50 Stat. 1311, and national implementing legislation, such as the Migratory Bird Treaty Act of June 20, 1936, 49 Stat. 1555, the Migratory Bird Conservation Act of June 15, 1935, 49 Stat. 381, and Act of March 10, 1934, 48 Stat. 401.

The refuge is administered by the Secretary of Interior; defendants are officers under the direction of the Secretary, one being regional director of the Fish and Wildlife Service having jurisdiction over the refuge and the other being the refuge manager. They have no individual interest in the lands of the refuge or the waters used thereon; their actions with respect to the operation of the refuge and the use of water for it are supervised by the Central Office under the Secretary of Interior.

The refuge manager purporting to act under authority of the Secretary of Interior is now and for several years has been engaged in diverting waters of the Rio Grande on the lands of the Bosque del Apache Grant for the purpose of creating and maintaining a wildlife refuge principally for water fowl.

The water used on the refuge comes by direct diversion from the Rio Grande into the Socorro Main Canal under agreement with the Middle Rio Grande Conservancy District, and by indirect diversion from the San Antonio Riverside Drain. The latter diversion appears to be the principal source of water for the refuge. Part of this water is permanently impounded on 82 acres of the refuge for a breeding place for wild fowl and stocking of fish. During the winter months, October to April, water is impounded on large areas of the refuge to provide resting and feeding grounds for wild fowl and water has been impounded to the first of 1953 on certain areas therein for the purposes of killing salt cedars and raising small grain to feed water fowl. Between 35 and 45 cubic feet of water per second is used on some 5,000 acres of developed lands within the refuge, the consumptive use of water being $\frac{3}{5}$ acre feet per acre.

Between October 1939 and June 1952 the United States has constructed 67.52 miles of dikes and drains on the refuge and 87 water control structures; 4058 acres of land have been cleared, plus 425 acres re-

worked, with 5048 acres for farming. These works and other improvements made on the lands of the refuge represent a total expenditure by the United States of $1,050,105.54, exclusive of administrative, supervisory and engineering expense.

*Without the use of water, whether derived from and by present means or through any pumping operations, it appears quite clear that this refuge could not be operated and maintained for the purpose for which it was established.*

## History of Water Use on Bosque del Apache Grant by Prior Owners

In 1906 the Socorro Company, a predecessor in interest of the United States, applied for permit to appropriate 97 cubic feet of water per second from the Rio Grande to irrigate 6,780 acres of land in the Bosque del Apache Grant. Beginning in 1910 and continuing down to and including July 25, 1951, the owners of the Grant have made various applications to territorial and state engineers for extensions of time within which to complete work and apply the water to beneficial use, which applications for extensions have been granted.

In 1923 one Schoellkopf, predecessor in title of the United States, acquired title to the Grant and made numerous applications for extensions of time within which to complete the work and apply the water to beneficial use. In none of his applications was there any showing that work was being done or of diligence on his part to do the work, the applications consisting of excuses why he had not done anything. From 1929 to 1940 there was no evidence of cultivation or irrigation on the grant lands. The Fish and Wildlife Service contemplated completion of its works on or before June 1, 1955, and to be able to prove application of the water to beneficial use under the terms of the last extension of time granted by the state engineer.

## Validity of Present Water Use on the Refuge

The use of the waters on the refuge constitutes an impairment of the rights of the landowners within the plaintiff district to the use of the waters of the Rio Grande and the acts of the defendants have deprived the landowners of the district of a part of the water to which they are entitled.

The use of the waters on the grant is not solely for the purpose of irrigation and constitutes change and manner of use for which no application has been made to or granted by the state engineer.

## Conclusions of Law of Trial Court

The trial court concluded it had jurisdiction of the cause and the parties; that the diversion and use of water on the refuge is in violation of the laws of this state in that (a) the use of the waters made is not for beneficial purposes and is made without valid application and permit

from the state engineer; (b) that the state engineer has no authority, under the law, to make the numerous extensions of time granted by him upon application by various owners of the grant; (c) for more than four years there was an abandonment of the use of water upon the grant by the owners thereof prior to the time said grant was acquired by the United States; (d) any right which the landowners of the grant may have by virtue of application by the Socorro Company for the appropriation of water in 1906 has been lost by failure of the successive owners of the grant to prosecute diligently the construction work and apply the water to a beneficial use and by failure to beneficially use the water for a period of more than four years.

It further concluded the defendants are unlawfully engaged in diverting waters of the Rio Grande onto the refuge; that the unlawful use of the water constitutes a depletion of the water supply of the river which would otherwise flow into Elephant Butte Dam and become part of the usable water of the Rio Grande Reclamation Project; that the unlawful use of the water by defendants constitutes an invasion of the rights of the landowners of the plaintiff district, the beneficial owners of part of the water impounded in the dam; that the action of the defendants in using the water constitutes a taking of property without due process of law and without just compensation therefor in violation of the Fifth and Fourteenth Amendments of the United States Constitution; that plaintiff is without a speedy and adequate remedy at law and is entitled to an injunction enjoining and restraining defendants from using any of the waters of the Rio Grande on the Bosque del Apache Grant.

The contentions of the parties center primarily upon decisions of the United States Supreme Court. The position of the plaintiff is, in substance, that the taking of water from the Rio Grande by the defendant officers is a tortious act and specific relief may be had against them under the authority of United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171. In that case Lee brought action in ejectment against defendant military officers who, under orders of the President, took possession of land claimed by Lee, the Arlington estate, and created a military fort and cemetery thereon. Lee's claim was based upon a devise from his grandfathers; the defendants asserted title in the United States on the basis of a tax sale certificate, claiming immunity from suit thereby. It was held by the Virginia court that the defendants were wrongfully in possession. The United States Supreme Court held the trial court did not err in refusing to dismiss the action as one against the United States. The rationale of the opinion is that the land was the private property of Lee and was taken without any process of law and without compensation, which unconstitutional taking met the objection that the land was devoted to a proper public use by those having authority to establish a fort and cemetery

thereon, the decision recognizing such adjudication was not res judicata against the United States.

Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209, is another case relied upon by plaintiff. There a steamship company sued the individual members of the Maritime Commission to recover stock alleged to have been pledged to the Commission as collateral for a debt since paid by the steamship company. It was held the district court had jurisdiction to determine its jurisdiction by proceeding to a decision on the merits. The decision appears to rest upon one or both of these principles, depending upon which way the complaint be viewed: (a) that the Commission members acted in excess of their *statutory* authority in that they had no authority to purchase the shares of stock or acquire them outright, Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; or (b) that although such statutory authority existed, the contract between the steamship company and the Commission was not an outright transfer, but merely a pledge—in other words the action of the Commission members in withholding the stock was tortious under general law, United States v. Lee, supra.

Although the court discusses and relies upon the Lee decision, it says this of it [330 U.S. 731, 67 S.Ct. 1012]:

"We do not trace the principle of United States v. Lee, supra, in its various ramifications. Cases on which petitioners rely are distinguishable. This is not an indirect attempt to collect a debt from the United States by preventing action of government officials which would alter or terminate the contractual obligation of the United States to pay money. [Citing cases.] It is not an attempt to get specific performance of a contract to deliver property of the United States. [Citing cases.] It is not a case where the sovereign admittedly has title to property and is sued by those who seek to compel a conveyance or to enjoin disposition of the property, the adverse claims being based on an allegedly superior equity or on rights arising under Acts of Congress. [Citing, among other cases, State of Louisiana v. Garfield, 211 U.S. 70, 29 S.Ct. 31, 53 L.Ed. 92.]

"We say the foregoing cases are distinguishable from the present one, though as a matter of logic it is not easy to reconcile all of them. But *the rule is based on practical considerations reflected in the policy which forbids suits against the sovereign without its consent. The 'essential nature and effect of the proceeding' may be such as to make plain that the judgment sought would expend itself on the public treasury or domain, or interfere with the public administra*tion. Ex parte State of New York, 256 U.S. 490, 500, 502, 41 S.Ct. 588, 590, 591, 65 L.Ed. 1057. *If so, the*

*suit is one against the sovereign.* Mine Safety [Appliances] Co. v. Forrestal, 326 U.S. [371] at page 374, 66 S.Ct. [219] at page 221, [90 L.Ed. 140]. \* \* \*." (Emphasis ours.)

Both the Lee case and Land v. Dollar, supra, are the subject of discussion in Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628. In the Larson case the matter in controversy was a quantity of surplus coal which the corporation contended it had purchased. Suit was brought against the head officer of the War Assets Administration seeking an injunction prohibiting him from selling or delivering the coal to anyone. but the plaintiff. It was contended on the one hand that title to the coal had already passed to the buyer, and on the other, that the contract had been breached by the buyer for his failure to deposit funds to pay for the coal in advance. The lower court dismissed the action as a suit against the United States, and its action was affirmed.

The decision reviews all instances where suit is permitted against officials, recognizing that suit will lie either where such official has exceeded the limits of his statutory authority or where the statutory authority is given but is unconstitutional, and, of course, instances where an officer has purported to act in his personal or individual capacity.

It is said that the Lee decision represents a specific application of the *constitutional* exception to the doctrine of sovereign immunity, and that the Lee case offers no support to the contention a claim of title to property held by an officer of the sovereign is, of itself, sufficient to demonstrate the officer holding the property is not validly empowered by the sovereign to do so. Only where claim is made that the holding constitutes an unconstitutional taking of property without just compensation does that conclusion follow; that with but one possible exception, the cases following the Lee case have granted specific relief against an officer only where there was a claim the taking of property or the injury to it was not the action of the sovereign because either unconstitutional or beyond the statutory powers of the officer. It is then said since the complaint in the Larson case did not charge the actions of the defendant were unconstitutional, but that they were merely "illegal" or "unlawful," the suit must fail.

The case of Land v. Dollar, supra, is apparently written off as being based solely upon principle (a) noted above, that the complaint alleged the defendants acted in excess of their statutory authority.

It is also notable that by footnote reference in the Larson case it is pointed out that the Lee case was decided at a time when there was clearly no remedy whereby Lee could obtain compensation for the taking of his lands—that the availability of a remedy today in similar cases in the Court of Claims may be relevant to the question of sovereign immunity in cases

where specific relief is sought, citing Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637. In this connection, see also: United States v. Gerlach Live Stock Co., 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231, and 28 U.S.C.A. Judiciary and Judicial Procedure § 1491.

We are of the opinion the instant case does fairly come within the rationale of the Lee case, in view of the finding and conclusion of the trial court that the lands of the refuge have no valid appropriative water rights, and that the diversion of water made from the Rio Grande by the defendants constitutes an unlawful taking in violation of the Constitution, which finding and conclusion are not attacked on this appeal. But we further believe the ruling of the Lee case has been so corseted by the decisions in Land v. Dollar and Larson v. Domestic & Foreign Corp., both supra, as to be inapplicable in any instance where the relief sought will not stop with affecting the specific property in the hands of the officer claimed to be privately owned.

. As already noted, the statement is made in Land v. Dollar, supra: "* * * the rule is based on practical considerations reflected in the policy which forbids suits against the sovereign without its consent. The 'essential nature and effect of the proceeding' may be such as to make plain that the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.

* * * If so, the suit is one against the sovereign."

The trial court found that without the continued application of water to the lands of the refuge, whether from present sources or otherwise, the operation of the refuge for the purposes for which it was established will be impossible. The United States unquestionably owns the lands of the refuge and the works thereon; the refuge was lawfully established in furtherance of the purposes and objectives of treaties between the United States and Great Britain and the United Mexico States, and Congressional Acts. Large sums of money have been expended by the United States upon the development of the site.

It seems patent that the granting of the specific relief sought will reach beyond the right to the waters claimed and found to be owned by the plaintiff and affect the public domain and treasury and interfere with public administration.

It is true that the Lee decision approved specific relief which operated not only on the land of Arlington estate, but upon the cemetery and military installations there as well; but there are, so far as we are aware, no later cases where specific relief of so sweeping a nature has been similarly approved. In Land v. Dollar, supra, the relief was apparently complete in its effect solely upon the stock held by the Commission. In Larson v. Domestic & Foreign Corp., supra, specific relief was denied un-

der the doctrine of the Lee case upon the tight distinction that the complaint did not allege the unconstitutionality of the official's actions. Further, the Larson case approved the holding in Land v. Dollar, supra, upon the single ground mentioned above, that the actions of the Commission members were alleged to exceed their statutory authority.

These cases exemplify the limitation of the Lee doctrine to the narrow area where the granting of specific relief stops with the official sued, with the strong suggestion noted above in the Larson case that future claimants even within the precise area of the Lee holding may be relegated to the Court of Claims for recovery of money under theory of inverse condemnation.

Before concluding this discussion it is well to refer to the case of State of New Mexico v. Backer, 10 Cir., 199 F.2d 426, 428. There action was instituted to enjoin an official in charge of Elephant Butte Dam and Reservoir from reducing the water level therein to a point which would destroy the fish in the reservoir and create a health menace. It was held the action was in essence a suit against the United States which must be dismissed.

It was not contended that the suit was founded upon either the theory that the officer had exceeded his statutory authority or that his statutory authority was unconstitutional. It was contended that "the compulsory powers of the courts may be exercised against a governmental officer when his acts are tortious or in violation of a state law."

The court held the contention must be rejected under the authority of the Larson case—that before the action could be enjoined it must be illegal in the sense that the official is acting beyond his lawful authority and that his acts are not the acts of the sovereign.

The opinion, while it does not pass upon the precise contention raised by the plaintiff in the present case, does contain this realistically pertinent language:

"* * * Pursuant to the reclamation laws, the Secretary of the Interior appropriated all the unappropriated waters in the Rio Grande River and entered into contracts with irrigation districts in New Mexico and Texas which comprised the project lands. These contracts required delivery of the water as specified in the contracts. Thereafter the United States constructed plants on the project for the generation of electric power and the districts, in consideration of a reduction of project costs chargeable to them, conveyed to the United States all their right, title and interest in the use of the dam and other project works including the project water supply for the development of electricity. The United States had entered into numerous contracts for the sale of electric power which was developed

on the project. The entire irrigation works, together with the power installations and transmission lines, were owned and operated by the United States. Backer was an officer of the United States in charge of all of the installations. There is no suggestion in the pleadings or the evidence that his duties were not those prescribed by the United States in conformity with valid statutes. Part of his duties was the release of water, from the reservoir to meet the obligations of the United States for the supply of irrigation water and electricity, and to meet the treaty obligations of the United States with the Republic of Mexico. We have no doubt but that the enjoining of government officials in this case interferes with the management and control of property of the United States and raises questions of law and fact upon which the United States would have to be heard."

In this regard see also: State of Louisiana v. Garfield, 211 U.S. 70, 29 S.Ct. 31, 53 L.Ed. 92; and State of New Mexico v. Lane, 243 U.S. 52, 37 S.Ct. 348, 61 L.Ed. 588.

We are of the opinion the judgment entered below will expend itself upon the United States, its properties and administration; that the United States is an indispensable party not before the court and that it has not consented to be sued. Accordingly, the judgment appealed from must be reversed with direction to enter judgment dismissing the action.

It is so ordered.

COMPTON, C. J., and McGHEE and KIKER, JJ., concur.

SADLER, J., not participating.