918 P.2d 717

Khampheuy **CHALEUNPHONH** and Chanthy Chaleunphonh, Individually and as Personal Representatives of Sounthala Mimi Chaleunphonh and Amphonepheth Chaleunphonh, Deceased; Khamphaeng Soukthavone Individually and as Personal Representative of Phetmany Soukthavone, Deceased; Channitha Chaleunphonh; Phouthasenh Chaleunphonh; and Phetdavong Soukthavone, Plaintiffs–Appellants/Cross–Appellees,

v.

PARKS AND RECREATION DIVISION of the State of New Mexico, Defendant–Appellee/Cross–Appellant.

No. 16293.

Court of Appeals of New Mexico.

March 21, 1996.

Certiorari Denied June 20, 1996.

Fred Abramowitz, Albuquerque, Angel Saenz, Las Cruces, for Appellants/Cross–Appellees.

Robert D. Castille, David B. Lawrenz, Simons, Cuddy & Friedman, L.L.P., Santa Fe, for Appellee/Cross–Appellant.

## OPINION

HARTZ, Judge.

1. Elephant Butte Reservoir (the Reservoir) was created early this century by federal construction of Elephant Butte Dam on the Rio Grande. The Reservoir stores water for use by the Elephant Butte Irrigation District and the El Paso Irrigation District

and for delivery to Mexico pursuant to treaty obligations.[1] In 1973 the federal Bureau of Reclamation leased to New Mexico for recreational purposes the water areas of the Reservoir and certain nearby lands and improvements. The Bureau of Reclamation retains control of the water level and dam operation. The New Mexico Department of Energy, Minerals and Natural Resources, through its Parks and Recreation Division (the Division), operates the leased area as Elephant Butte Lake State Park (the Park).

2. This appeal arises from a tragic incident at the Park. Three young women, Sounthala Mimi Chaleunphonh, Amphonepheth Chaleunphonh, and Phetmany Soukthavone, were wading in shallow water when Sounthala Mimi Chaleunphonh stepped off a steep ledge in the Reservoir. Her two companions attempted to rescue her, but all three drowned. Their estates and some of those who observed the drowning sued under the New Mexico Tort Claims Act, NMSA1978, §§ 41–4–1 through –27 (Repl. Pamp.1989),[2] alleging that the Division was negligent in failing to post signs warning of the dangers of swimming or of the sudden drop-off in the Reservoir. The district court granted summary judgment in favor of the Division on the ground that it was entitled to governmental immunity under Section 41–4–6. The court rejected the Division's contention that Plaintiffs' claims were barred because notice of the claims was untimely under Section 41–4–16. Plaintiffs appeal from the immunity ruling, and the Division cross-appeals from the notice ruling. We affirm the summary judgment on the ground adopted by the district court. Therefore, we need not address the issues raised by the cross-appeal.

■ 3. The Tort Claims Act grants governmental entities in New Mexico immunity from liability for all torts except as waived in the Act. Section 41–4–4(A). Plaintiffs contend that immunity was waived by Section 41–4–6, while the Division contends that the second sentence of that section (the Works Provision) preserves immunity for claims of the type raised by Plaintiffs. Section 41–4–6 states:

> The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings. Nothing in this section shall be construed as granting waiver of immunity for any damages arising out of the operation or maintenance of works used for diversion or storage of water.

4. *Allocca v. New Mexico Department of Energy Minerals & Natural Resources,* 118 N.M. 668, 884 P.2d 824 (Ct.App.), *cert. denied,* 118 N.M. 731, 885 P.2d 1325 (1994), held that the Works Provision preserves immunity with respect to works used for the diversion or storage of water even when that is not their exclusive use. *Accord Bell v. New Mexico Interstate Stream Comm'n,* 121 N.M. 328, 911 P.2d 222 (Ct.App.1995) (No. 16,321). In *Allocca* the plaintiff was injured on Conchas Lake, which was used for both recreation and the storage of water.

5. Nevertheless, Plaintiffs contend that the Works Provision does not provide immunity in this case. They argue that (1) the Reservoir is not a "works" used for the diversion or storage of water, or at least that is not its primary function; and (2) placement of signage that warns of dangers at the Reservoir would not be operation or maintenance of the Reservoir but, rather, operation or maintenance of the Park. We reject these arguments.

■ 6. To the extent that Plaintiffs contend that the Reservoir is not a "works," we disagree. Our holding in *Allocca* implied

---

1. The history of the Elephant Butte project has been nicely summarized by Justice Easley in *Holguin v. Elephant Butte Irrigation District,* 91 N.M. 398, 575 P.2d 88 (1977), and by Justice Lujan in *Elephant Butte Irrigation District v. Gatlin,* 61 N.M. 58, 294 P.2d 628 (1956).

2. Other theories of liability raised in the complaint have not been pursued on appeal.

that a reservoir comes within the statutory meaning of "works," because otherwise there would have been no immunity for the injury occurring on Conchas Lake. This understanding of the term is consistent with usage in a number of New Mexico statutes governing water resources. For example, NMSA1978, Section 72–5–15 (Repl.1985), includes the language: "[A]ny person, firm, association or corporation shall enlarge an existing canal, acequia, *reservoir or other works* ..."; and NMSA1978, Section 72–5–26 (Repl.1985), contains the phrase: "[T]he owner of a ditch, canal, pipeline, *reservoir or other works....*" Similar phrasing occurs in NMSA1978, Sections 72–1–2, –9–1, –12A–12(A), –14–9(c) (Repl.1985) and NMSA1978, Sections 73–5–2(H), –12–25, and –15–1(A).

■ 7. Plaintiffs are more vigorous in their argument that the Reservoir, even if a "works," was not "used for diversion or storage of water." They contend that the record establishes only that it was used for recreational purposes. Although Plaintiffs acknowledge that the Reservoir "is formed by Elephant Butte Dam, a man-made dam which impounds water for use downstream by Elephant Butte Irrigation District and for delivery to Texas and Mexico pursuant to the Rio Grande Compact," they contend that "there is no evidence that anyone 'uses' the [Reservoir] for anything other than recreation purposes." They note that the title of the lease with the United States says that the lease is "for development, operation and maintenance for public recreation purposes," and they then assert that "[t]he only operation and maintenance that occurs in the area that relates to the diversion or storage of water occurs at Elephant Butte Dam, an area which pursuant to the Lease Agreement was specifically reserved to the United States government."

8. As we understand this argument, Plaintiffs are saying that the dam may be used for diversion and storage of water, but the Reservoir itself is not "used" for such purposes. The argument is creative, but not convincing. A "reservoir" is a "place where water is collected and stored for use." *The Random House Dictionary of the English Language* 1220 (1971). The Reservoir is used to store water which can then be diverted for irrigation uses or to comply with commitments imposed by treaty or the Rio Grande Compact, NMSA1978, § 72–15–23 (Repl.1985). In fact, it is noteworthy that the Compact defines "Project storage" as "the combined capacity of Elephant Butte reservoir and all other reservoirs actually available for the storage of usable water below Elephant Butte and above the first diversion to lands of the Rio Grande project...." *Id.* art. I(k). There should be no question that the Reservoir is "used" for the storage of water.

■ 9. We also reject Plaintiffs' contention that we must look to the "primary, direct or immediate purpose or use" of the Reservoir, and that this purpose or use is public recreation. The Works Provision speaks of "works used for diversion or storage of water," not "works *primarily* used for diversion or storage of water." Indeed, a "primary use" test would be unworkable. As long as a reservoir is used for both recreation and storage of water, we fail to see how one would determine what the primary use is. Boating enthusiasts might well view the primary purpose as recreation, but farmers and the state engineer would likely have a different view. Perhaps there is some reservoir whose use for storage of water is so insignificant and incidental that it would be inappropriate to apply the Works Provision. We need not reach that issue, however, because that is not the situation here.

■ 10. Finally, Plaintiffs contend that the Works Provision does not apply because the negligence alleged in this case did not take place in the Reservoir but on the park lands surrounding it. We agree that the Works Provision does not immunize the State from liability for all negligence occurring in the operation or maintenance of Elephant Butte State Park. Much, if not most, of the operation and maintenance of the Park does not come within the Works Provision. What we disagree with is the contention that the negligence alleged here is not negligence in the operation or maintenance of the Reservoir.

11. Plaintiffs' argument appears to be that (1) the warning signs should have been on the roads and lands of the Park, (2) the roads and lands are not "works used for the diversion and storage of water," and (3) placement of such signs is part of the maintenance and operation of the Park, not maintenance and operation of the Reservoir. In support of their argument they cite *O'Brien v. Middle Rio Grande Conservancy District,* 94 N.M. 562, 613 P.2d 432 (Ct.App.1980). In that case a motorcyclist was injured by a cable stretched across a service road used by the conservancy district. No signs warned of the cable. The conservancy district contended that it was immune from liability under the Works Provision. We rejected the argument, stating, "Defendant's service roadway, on the ditch bank, was used for the maintenance of the canal and ditch bank; however, the service road was not used for the diversion of water." *Id.* at 567, 613 P.2d at 437. Likewise, Plaintiffs contend, the roads or portions of the Park at which warning signs should have been posted were not used for the diversion or storage of water.

12. The question, however, is not whether the locations where the signs would be posted are used for storage or diversion of water but whether posting of the signs—be they on roadways to the Reservoir, on the Reservoir shore, or even in the Reservoir itself—is part of the operation and maintenance of the Reservoir. *O'Brien* held that the posting of warning signs concerning the road could not be construed as part of the operation or maintenance of the conservancy district's canal. But *O'Brien* does not imply that the posting of signs warning of dangers in the Reservoir is not part of the operation or maintenance of the Reservoir. On the contrary, *O'Brien* actually supports immunity in this case. Liability in *O'Brien* was predicated on Section 41–4–11, which waives immunity for negligence in the maintenance of roadways. Part of the alleged negligence, for which immunity was held to be waived, was the failure to post warning signs concerning the roadway. *O'Brien,* 94 N.M. at 566, 613 P.2d at 436; *see also Blackburn v. State,* 98 N.M. 34, 36, 644 P.2d 548, 550 (Ct.App.1982) (immunity waived with respect to negligent failure to provide proper signage for inter-

section). In other words, providing proper signage for travelers was held to be a component of maintenance of the roadway. Similarly, providing signs warning of danger in the Reservoir would be a component of maintaining and operating the Reservoir. Negligence in such activity is therefore immunized by the Works Provision.

■ 13. Having disposed of the contentions raised by Plaintiffs, ordinarily we would now conclude our discussion. Unfortunately, however, the dissent raises an argument which concededly was not raised by the Plaintiffs at trial or on appeal. In our view, there is no exceptional circumstance that could justify considering the argument. The dissent expresses discontent with the traditional role of appellate courts, characterizing that role as merely "referee[ing] at a dog fight." But experience demonstrates that nothing can bring a court into disrepute more quickly than to engage in practices that appear result-oriented.

14. To reverse a judgment on a ground not raised below (to say nothing of a ground neither raised below nor on appeal) is especially inappropriate when the ground requires a factual predicate and the party who prevailed below had no reason to make a record regarding the factual predicate. *See State v. Ramzy,* 116 N.M. 748, 750–51, 867 P.2d 418, 420–21 (Ct.App.1993) (state could not raise for the first time on appeal a fact-based argument for reversing order suppressing evidence), *cert. denied,* 116 N.M. 801, 867 P.2d 1183 (1994). Yet that is the situation here. The dissent expresses the understanding that "the federal government has retained responsibility for management and maintenance of all the physical facilities within the Elephant Butte Reservoir area which could constitute 'works'...." On what basis the dissent reached that understanding is unclear to us. The lease provides that the State "will occupy, use, operate, maintain, develop, improve, manage, and supervise the leased premises." The leased premises include the Reservoir, which, as explained above, is undoubtedly a "works." To the extent that there is doubt regarding the duties of the State with respect to the Reservoir and Park, it is because the positions of

the parties in the district court presented no reason for them to pursue the matter further.

15. Our failure to address the substance of the dissent's argument does not mean that we find the substance persuasive. Indeed, we have difficulty understanding the argument. Suffice it to say that the issue is one that can be addressed in a future case after preparation of a proper factual record and argument by the parties at the trial level.

16. For the above reasons, we affirm the district court's summary judgment.

17. **IT IS SO ORDERED.**

FLORES, J., concurs.

BUSTAMANTE, J., dissents.

### DISSENT

BUSTAMANTE, Judge.

18. I respectfully dissent. As the briefs describe the lease arrangement between the United States and the State of New Mexico, the federal government has retained responsibility for management and maintenance of all the physical facilities within the Elephant Butte Reservoir area which could constitute "works" as the term is used in the Tort Claims Act. Plaintiffs assert, and the Defendants do not disagree, that State employees are not engaged in operation or maintenance of the "works." State employees are exclusively employed to operate and maintain the facilities used for the public recreation purposes allowed under the lease. Assuming this is an accurate description of the division of responsibility between the State and the federal government, the effect of our ruling today is to protect the State from an activity it is not engaged in and from a responsibility it has not undertaken. I do not believe it is necessary to go to this length to give full effect to the legislative aim embodied in NMSA1978, Section 41–4–6 (Repl. Pamp.1989).

19. As described in NMSA1978, Section 41–4–2 (Repl.Pamp.1989), the Tort Claims Act is a legislative compromise aimed at accommodating the need to compensate those injured by State action or inaction with the recognition that the State's potential exposure to liability is very broad. Paraphrasing the Tort Claims Act, because its power to act for the public good is almost without limit, the State should not have imposed upon it the duty to do everything that might be done. Section 41–4–2(A). Thus, the Tort Claims Act limits State liability to certain governmental activities excepted from a blanket grant of immunity. NMSA1978, §§ 41–4–5 to –13 (Repl.Pamp.1989). And, liability may only "be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." Section 41–4–2(B); see Saiz v. Belen Sch. Dist., 113 N.M. 387, 827 P.2d 102 (1992). There is nothing in this design indicating that the legislature intended to protect the State from activities it has not undertaken or responsibilities it has not accepted.

20. The majority opinion immunizes the State because of the nature of the Elephant Butte Reservoir as a "works" even though the State is not involved in the maintenance or operation of the work. With obvious exceptions such as respondeat superior and situations involving non-delegable duties, tort liability in negligence flows from acts, or failures to act, not from status. Id. To this extent the majority ruling is a departure from traditional tort concepts. My proposed distinction would preserve the immunity sought by the legislature as well as allow claims for those activities contemplated in the first sentence of Section 41–4–6. My approach would also preserve the "dual purpose equals immunity" holding of Allocca v. New Mexico Department of Energy Minerals & Natural Resources, 118 N.M. 668, 884 P.2d 824 (Ct.App.), cert. denied, 118 N.M. 731, 885 P.2d 1325 (1994).

21. While Plaintiffs have argued the factual predicate to my position, I acknowledge they have not stated the legal issue in precisely the way I have framed it. From that standpoint, I have some reservation in making my argument because the conventional theory is that opinions should determine points raised by the parties and that it is improper to inject new issues or apply principles not argued by counsel. I agree that in most cases we should not stray from the case

presented by the parties. Certainly, if the court chooses to deal substantively with a new issue, an opportunity should be granted to the parties to provide supplemental briefing. For example, if we were proposing to reverse here based on my theory of the case, I would request additional briefing. However, I also believe that appellate judges are more than "referees at a dog fight." The function of an appellate court is to decide cases, not simply to judge a debate between counsel.